Aram Ordubegian (SBN 185142)
M. Douglas Flahaut (SBN 245558)
Christopher K.S. Wong (SBN 308048)
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
Telephone:    213.629.7400
Facsimile:    213.629.7401
aram.ordubegian@arentfox.com
douglas.flahaut@arentfox.com
christopher.wong@arentfox.com

*Proposed* General Bankruptcy and Restructuring
Counsel for Debtors and Debtors-In-Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>**G-STAR RAW RETAIL INC.**, a Delaware corporation,<br><br>Debtor and Debtor-in-Possession.<br><br>-------------------------------------------------------<br><br>In re<br><br>**G-STAR INC.**, a Delaware corporation,<br><br>Debtor and Debtor-in-Possession.<br><br>[x] Affects both Debtors.<br>[ ] Affects G-Star Raw Retail Inc. only<br>[ ] Affects G-Star Inc. only.<br><br>Debtors and Debtors-in-Possession. | Lead Case No.: 2:20-bk-16040-WB<br><br>Chapter 11<br><br>Jointly Administered with<br>Case No.: 2:20-bk-16041<br><br>**MOTION FOR ORDER AUTHORIZING REJECTION OF CERTAIN LEASES AND ABANDONMENT OF PERSONAL PROPERTY IN CONNECTION THEREWITH; DECLARATION OF NICOLE CLAYTON AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br><u>Hearing</u><br>Date:    July 30, 2020<br>Time:    10:00 a.m.<br>Place:    Courtroom 1375<br>    255 E. Temple St.,<br>    Los Angeles, CA 90012 |

**TO THE HONORABLE JULIA W. BRAND, UNITED STATES BANKRUPTCY JUDGE; AND ALL INTERESTED PARTIES:**

The above-captioned debtors and debtors-in-possession G-Star Raw Retail Inc. ("G-Star Retail") and G-Star Inc. ("G-Star") (collectively, the "Debtors"), hereby move this Court for entry of an order authorizing (1) the rejection of certain non-residential real property leases (collectively, the "Leases") effective as of July 9, 2020, the date on which this lease rejection motion is filed (the "Lease Rejection Date"), and (2) the abandonment of the Debtor's personal property of *de minimis* value (the "Remaining Personal Property") at the corresponding locations (collectively, the "Locations") upon surrender of the premises.

As set forth in detail in the annexed Memorandum of Points and Authorities and as supported by the annexed declaration of Nicole Clayton (the "Clayton Declaration"), there are good and sufficient grounds for granting this Motion under Sections 105, 365, and 554 of title 11 of the U.S. Code (the "Bankruptcy Code"). While G-Star Retail has been concerned with the profitability of many of its brick and mortar retail locations for some time, the onset of the COVID-19 global pandemic has accelerated the need for a 'right-sizing', and it has no choice but to close the unprofitable locations and reject the associated leases immediately as part of these restructuring proceedings.

For the past few months, the Debtors have been in negotiation for improved lease terms, but without sufficient landlord cooperation and adequate rent abatement and reduction, it is now necessary for the Debtors to eliminate those stores whose continued operation would inhibit a successful reorganization. To minimize administrative rent obligations, the Debtors are now seeking to reject those certain Leases identified in **Exhibit 1** to the Clayton Declaration.

The Debtors intend to remove all personal property of the estates from the Locations and surrender each Location on or before July 30, 2020. However, in the event that doing so is impracticable the Debtors will file with the Court and serve on the affected landlords notice that additional time to remove property of the estates will be required. This notice will specifically identify the property as well as the amount of time after July 30, 2020 necessary for the Debtors to fully vacate the premises, remove all estate property, and surrender it to the landlord. Under no

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/22398551.2

circumstances will the surrender date for any Location be later than August 31, 2020.

In the event certain personal property of one or both estates remains at a Location after the property is surrendered to the landlord, the Debtors assert that such Remaining Personal Property is of *de minimis* value and that the cost to the estate of removing, storing, protecting and marketing any Remaining Personal Property would be significantly more than the value of that property. Therefore, the Remaining Personal Property, if any exists after the Location is surrendered, is burdensome to the estate and should be abandoned accordingly.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order: (i) granting the Motion, (ii) authorizing the rejection of the Leases listed on **Exhibit 1** as of the Lease Rejection Date, (iii) authorizing and approving the abandonment of the Remaining Personal Property upon surrender of the premises, and (iv) granting such other and further relief as it deems necessary and appropriate.

Dated:    July 9, 2020                **ARENT FOX LLP**

By: */s/ M. Douglas Flahaut*
    Aram Ordubegian
    M. Douglas Flahaut
    Christopher K.S. Wong
    *Proposed* General Bankruptcy and
    Restructuring Counsel for Debtors and
    Debtors-In-Possession

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**JURISDICTION AND VENUE**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The basis for the relief sought herein arises from 11 U.S.C. §§ 105, 365(a), ad 554(a).

**II.**

**BACKGROUND**

A. **General Background**

On July 3, 2020 (the "Petition Date"), the Debtors filed their voluntary petitions under chapter 11 of the Bankruptcy Code and have elected to proceed under Subchapter V as "small business debtors." Since then, the Debtors have been operating as debtors-in-possession. On or about July 8, 2020, the United States Trustee appointed Gregory K. Jones as the Subchapter V trustee of the above-captioned cases pursuant to 11 U.S.C. § 1183(a).

As described in detail in the *Declaration Of Nicole Clayton In Support Of Emergency First Day Motions* [Dkt. No. 10] (the "First Day Declaration"), as incorporated herein by reference, the Debtors filed for bankruptcy with the intent of aggressively pursuing an exit strategy to resolve their issues and emerge from chapter 11 in a relatively short time.

B. **The "Right Sizing" of the Retail Lease Portfolio**

A critical element of the Debtors' reorganization effort is that they be allowed to right-size their lease portfolios, which will allow the Debtors to eliminate hundreds of thousands of dollars in annual operating expenses. The retail store footprint includes approximately thirty-one (31) unexpired non-residential real property leases. While the Debtors have been concerned with the profitability of many of G-Star Retail's brick and mortar retail locations for some time, the onset of the COVID-19 global pandemic has accelerated the need for a 'right-sizing' of G-Star Retail, and it has no choice but to close its unprofitable locations and reject the associated leases immediately as part of these restructuring proceedings.

While G-Star Retail is in the process of reopening certain of their stores where it is financially and physically possible to do so, its current intention is to reduce the retail footprint to seven stores, though this number could change slightly in the event certain landlords are willing to make significant concessions.  As such, the Debtors have determined in their sound business judgment to seek the authority to reject those twenty-five (25) Leases listed on **Exhibit 1** to the Clayton Declaration as identified by location, lessor, lessee (*i.e.* G-Star Retail or G-Star) and Store ID.[1]

The Debtors have analyzed whether each of the Leases could be assigned or subleased.  In each instance, the Debtors have determined that the rents under such leases are at or above-market and the assignment or sublease of these leases as a way to realize value to the estates has been made impracticable, if not impossible, by the impact of the COVID-19 pandemic.  Given the Debtors have already ceased retail operations at the Locations, any delay in rejecting the associated leases will only further expose the Debtors to potential administrative rent claims that, if allowed, would further erode the value of these estates.

The Debtors intend to remove all personal property of the estates from the Locations and surrender each Location on or before July 30, 2020.  However, in the event that doing so is impracticable the Debtors will file with the Court and serve on the affected landlords notice that additional time to remove property of the estates will be required.  This notice will specifically identify the property as well as the amount of time after July 30, 2020 necessary for the Debtors to fully vacate the premises, remove all estate property, and surrender it to the landlord.  Under no circumstances will the surrender date for any Location be later than August 31, 2020.  In the event property remains at a Location after the date it is surrendered, the Debtors assert that such Remaining Personal Property is of *de minimis* value and that the cost to the estate of removing,

---

[1] The Debtors have included in the list of leases to be rejected the stores located at 270 Lafayette St, New York, NY 10012 in the SoHo district and 441 Broadway, New York, NY 10013.  This is despite the fact that no written lease exists between the either Debtor and the landlords with respect to these stores.  As such, the Debtors seek to reject the 'leases' out of an abundance of caution in the event either landlord takes a contrary view and asserts there is an operative lease.  However, the Debtors specifically reserve all rights whatsoever with respect to these locations and any claim or claims the landlords may make.  The Debtor also included two other leases out of the abundance of caution: the Las Vegas Outlet lease, which terminated as of June 30, 2020, but the Debtor has not vacated the premises; and the Cherry Hill Center lease, for which the premises have already been turned over to the landlord.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/22398551.2

storing, protecting and marketing any Remaining Personal Property would be significantly more than the value of that property and therefore seeks authority herein to abandon such property.

## III.

## ARGUMENT

A. **Rejection of the Leases is Within the Sounds Discretion of the Debtors' Business Judgment**

Bankruptcy Code Section 365(a) provides that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). This provision allows a debtor in possession "to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (*citing In re Murexco Petroleum, Inc.*, 15 F.3d 60, 62 (5th Cir. 1994)).

Although Section 365(a) does not set forth standards for courts to apply in determining whether to approve a debtor's decision to assume or reject unexpired leases, courts have overwhelmingly applied a "business judgment" test when reviewing such a decision. *See Agarwal v. Pomona Valley Med. Group, Inc. (In re Pomona Valley Med. Group, Inc.)*, 476 F.3d 665, 670 (9th Cir. 2007) (*citing N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984)). As the Bankruptcy Appellate Panel has held, a debtor may exercise its business judgment to reject executory contracts or unexpired leases that are no longer useful or necessary to the bankruptcy estate. *Robertson v. Pierce (In re Chi-Feng Huang)*, 23 B.R. 798, 800-01 (B.A.P. 9th Cir. 1982). The standard for rejection is satisfied when a debtor has made a business determination that rejection will benefit the estate. *See Commercial Fin. Ltd. v. Haw. Dimensions, Inc.* (*In re Haw. Dimensions, Inc.*), 47 B.R. 425, 427 (D. Haw. 1985) ("[U]nder the business judgment test, a court should approve a debtor's proposed rejection if such rejection will benefit the estate.").

In evaluating a debtor's decision whether to assume or reject, "the bankruptcy court should presume that the debtor . . . acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." *In re Pomona Valley Med. Group, Inc.*, 476 F.3d at 670 (*citing Navellier v. Sletten*, 262 F.3d 923, 946 n.12 (9th Cir.

2001) and *FDIC v. Castetter*, 184 F.3d 1040, 1043 (9th Cir. 1999)). A bankruptcy court should approve a debtor's decision to assume or reject an unexpired lease under Section 365(a) unless it finds that the debtor's conclusion that the assumption or rejection would be advantageous "is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice." *Pomona Valley Med.* Group, 476 F.3d at 670 (*quoting Lubrizol Enter. v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir. 1985)). In applying the business judgment test, courts show great deference to the debtor's decision to reject. *See, e.g., Summit Land Co. v. Allen (In re Summit Land Co.),* 13 B.R. 310, 315 (Bankr. D. Utah 1981) (noting that, absent extraordinary circumstances, court approval of debtor's decision to assume or reject executory contract "should be granted as a matter of course").

Continuing its prepetition effort to reexamine its lease portfolios in light of the ongoing impact of the COVID-19 pandemic, the Debtors have identified a number of unprofitable stores / leases based on historical revenue and projections. While the Debtors are in the process of reopening certain stores where it is financially and physically possible to do so, their current intention is to reduce the retail footprint from 31 stores to seven stores. Closure of the remaining 25 unprofitable Locations and rejection the associated Leases as identified in **Exhibit 1** will enable the Debtors to reorganize around their profitable stores and reduce administrative rent obligations.

Based on the foregoing, the Debtors posit that rejection of the Leases is necessary to minimize administrative obligations and to preserve the value of their estates, and that the proposed rejection of the Leases is therefore in the best interests of the estates and their creditors. The Debtors caveat that the designation of a Lease as one to be rejected depends on the outcome of ongoing discussions with the landlord between now and the hearing on this Motion and, in the event the Debtors are able to obtain significant lease concessions and/or rent abatements, the Debtors reserves the right to make the decision not to reject any of the leases set forth in **Exhibit 1** at any time prior to the hearing on this Motion. In the event the Debtors decide not to reject any lease currently on **Exhibit 1**, a notice regarding such lease will be filed with the Court and served on the affected landlord on or before the July 30, 2020 hearing.

**B.    Retroactive Rejection of the Leases to the Lease Rejection Date is Warranted**

In the Ninth Circuit, courts may exercise their equitable powers and order rejection to be effective retroactively. *See Pacific Shore Dev., LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d 1064, 1067 (9th Cir. 2004) (holding "that a bankruptcy court, in exercising its equitable powers under 11 U.S.C. § 105(a), may approve the retroactive rejection of a nonresidential lease when 'necessary or appropriate to carry out the provisions of' § 365(d)."); *see also Thinking Machs. Corp. v. Mellon Fin Servs. Corp. (In re Thinking Machs. Corp.)*, 67 F.3d 1021, 1029 (1st Cir. 1995); *see e.g. In re Amber's Stores, Inc.,* 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (permitting rejection retroactive to the petition date); *see also Constant Ltd. P'ship v. Jamesway Corp. (In re Jamesway Corp.)*, 179 B.R. 33, 38 (S.D.N.Y. 1995).

In *Pacific Shore*, the Ninth Circuit Court of Appeals upheld the district court's decision to authorize retroactive rejection of the debtor's leases and overruled the landlord's contention that repossession of the leased premises is a perquisite to lease rejection. *Id*. at 1072. In doing so, the Ninth Circuit identified four non-exclusive factors for retroactive rejection: (1) the debtor's immediate filing of a motion to reject the lease; (2) a debtor's prompt action in setting that motion for hearing; (3) the vacancy of the leased premises; and (4) the landlord's conduct and motivation in opposing a retroactive rejection of the lease. *Id*.

Here, the factors weigh in favor of granting retroactive relief: (1) the Debtors moved for rejection on the Lease Rejection Date; (2) the Debtors set this Motion for hearing on the first available hearing date on the Court's calendar that satisfies the 21-days' notice requirement under Local Bankr. R. 9013-1(d); and (3) while all Locations are not yet vacated, all stores for the Locations have been closed and the Debtors are working to vacate and surrender the premises as soon as is practicable. The last factor depends on how objecting landlords, if any, proceed with respect to the Debtors' efforts to reject the Leases and surrender the Locations, but the Debtors believe this factor should ultimately also support retroactive rejection.

Based on the foregoing, due in large part to the accelerated manner in which Debtors have sought rejection of the Leases, set this Motion for hearing, and continues to work to vacate and turnover the premises in question to the landlords, the Debtors submit that retroactive rejection of

the Leases as of the Lease Rejection Date is warranted.

C. **Surrender of Locations to the Landlords and Abandonment of *De Minimis* Personal Property**

Section 554(a) of the Bankruptcy Code provides that, "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). In evaluating decisions to abandon property of the estate, courts focus on whether such a decision reflects a business judgment made in good faith. *See, e.g., In re Cult Awareness Network, Inc.*, 205 B.R. 575, 579 (Bankr. N.D. Ill. 1997) (citations omitted); *In re Wilson*, 94 B.R. 886, 888-89 (Bankr. E.D. Va. 1989); *In re Moore*, 110 B.R. 924, 928 (Bankr. C.D. Cal. 1990) ("The choice of which type of action [is appropriate to liquidate assets of estate] (whether it be . . . negotiation, open bidding, or bringing a formal motion for abandonment) belongs to the trustee within the sound exercise of the trustee's business judgment . . . .").

The Debtors intend to surrender the Locations to the landlords in broom-clean condition on or before July 30 2020. However, in the event that doing so is not possible the Debtors will file with the Court and serve on the affected landlords notice that additional time will be required to remove estate property. This notice will specifically identify the Location as well as the amount of time after July 30, 2020 necessary for the Debtors in question to fully vacate the premises, remove all estate property, and surrender the premises to the affected landlord. Under no circumstances will the surrender date for any Location be later than August 31, 2020. For the avoidance of doubt, under all scenarios the date of surrender will be the date that keys are turned over to the landlord and/or the landlord receives written notice that the property has been surrendered to the landlord.

The Debtors intend to remove all valuable personal property from the locations prior to surrender and, as such, do not believe that there will be any significant property at the Locations to be abandoned. However, in the event property remains at one or more Locations after the date of surrender, the Debtors assert that such Remaining Personal Property is of *de minimis* value and that the cost to the estate of removing, storing, protecting and marketing any Remaining Personal Property would be significantly more than the value of that property. Thus, in the event that *de*

- 9 -

*minimis* remaining personal property might be inadvertently left at a location, or in the event that a landlord and the Debtor(s) may agree that certain Remaining Personal Property is to remain at a location as a matter of convenience to both parties, the Debtors hereby seek authority, in the exercise of their business judgment, to abandon any such Remaining Personal Property.

### IV.

### **RESERVATION OF RIGHTS**

The Debtors reserve the right, prior to the hearing on this Motion, to negotiate and enter into agreements with one or more of the landlords whose Leases the Debtors are seeking to reject by way of this Motion. In the event the Debtors decide not to reject any lease currently on **Exhibit 1**, a notice regarding such lease will be filed with the Court and served on the affected landlord or landlords on or before the July 30, 2020 hearing.

Furthermore, nothing contained herein shall be construed as (i) an admission as to the validity and amount of any claim against the estates; (ii) waiver of any claims or causes of action that may exist against a landlord or interest holder; (iii) a concession or evidence that any agreement constitutes either a "lease" or "executory contract" within the meaning of 11 U.S.C. § 365 and other applicable law.

### V.

### **CONCLUSION**

For the reasons set forth herein, and based on the Motion, the notice of the Motion, this Memorandum of Points and Authorities, the record in these cases, and any argument of counsel at the hearing, there are good and sufficient grounds for this Court to enter an order: (i) granting the Motion, (ii) authorizing and approving the rejection of the Leases listed on **Exhibit 1** to the Clayton Declaration as of the Lease Rejection Date, (iii) authorizing and approving the abandonment of the Remaining Personal Property upon surrender of the premises, and (iv) granting such other and further relief as it deems necessary and appropriate.

Dated:    July 9, 2020                          **ARENT FOX LLP**

By: */s/ M. Douglas Flahaut*
Aram Ordubegian
M. Douglas Flahaut
Christopher K.S. Wong
*Proposed* General Bankruptcy and
Restructuring Counsel for Debtor and
Debtor-In-Possession

# DECLARATION OF NICOLE CLAYTON

I, Nicole Clayton, declare as follows:

1. I am over 18 years of age. If called as a witness, I could and would competently testify with respect to the matters set forth in this declaration from my own personal knowledge or from knowledge gathered from others within the debtors' organization and the debtors' advisors, my review of relevant documents, or my opinion based upon my experience concerning the debtors' operations.

2. In my capacity as General Manager, North America, I am the Chief Executive Officer of G-Star Inc. ("G-Star") and G-Star Raw Retail Inc. ("G-Star Retail") the debtors and debtors-in-possession in the above-captioned chapter 11 cases (individually a "Debtor" and collectively the "Debtors"), and I submit this declaration in support of the foregoing *Motion for Order Authorizing Rejection of Certain Leases and Abandonment of Personal Property in Connection Therewith* (the "Motion").[2]

3. As of the Petition Date, G-Star Retail is a party to 31 unexpired commercial leases for the operation of brick and mortar retail stores located in 13 states. In addition, G-Star leases an office space located at 599 Broadway, Unit A 11th Floor, New York, NY 10012.

4. A critical element of the Debtors' reorganization effort is that G-Star Retail be allowed to right-size its lease portfolios, which will allow the Debtors to eliminate hundreds of thousands of dollars in annual operating expenses. While the Debtors have been concerned with the profitability of many of G-Star Retail's retail locations for some time, the onset of the COVID-19 global pandemic has accelerated the need for a 'right-sizing'.

5. My advisors and I have reviewed the Debtors' entire lease portfolios and have reviewed the historical performance and future projected profitability of each of the 31 store locations.

6. While G-Star Retail is in the process of reopening certain of its stores where it is financially and physically possible to do so, its current intention is to reduce the retail footprint to 7 stores, though this number could change slightly in the event certain landlords are willing to make

---

[2] Capitalized terms not defined herein shall have the meanings ascribe to them in the Motion.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/22398551.2

significant concessions. Thus, with the help of my advisors, I believe it is in the best interest of the respective Debtor to immediately and permanently close the unprofitable Locations identified in **Exhibit 1** attached hereto and reject the associated Leases as part of these restructuring proceedings.

7. I have analyzed whether each of the Leases could be assigned or subleased in way that could yield value for the estate. In each instance, I have determined in the COVID-19 pandemic and its effect on the retail rental market that the rents under such leases are currently at or above-market and the assignment or sublease of these leases has been made impracticable, if not impossible, by the impact of the COVID-19 pandemic. Given that the Debtors have already ceased operations at the Locations, any delay in rejecting the associated leases will only further expose the estate to potential administrative rent claims.

8. I intend to ensure the Debtors remove all personal property of the estates from the Locations and surrender each Location on or before July 30, 2020. However, in the event that doing so is impracticable then I will cause the Debtors to file with the Court and serve on the affected landlords notice that additional time to remove property of the estates will be required. This notice will specifically identify the property as well as the amount of time after July 30, 2020 necessary for the Debtors to fully vacate the premises, remove all estate property, and surrender it to the landlord. It is my firm believe that under no circumstances will the surrender date for any Location be later than August 31, 2020.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed Thursday, July 9, 2020, at New York, New York.

_____
Nicole Clayton

# EXHIBIT 1

**Exhibit 1**

| Debtor | Note | Location | Landlord |
|---|---|---|---|
| G- Star RAW Retail Inc. | | Beverly Center | Taubman La Cienega Partners LP |
| G- Star RAW Retail Inc. | | Canal Place | Wilson Canal Place II LLC |
| G- Star RAW Retail Inc. | | Detroit | Merchants Row Webward LLC |
| G- Star RAW Retail Inc. | | Green Hills Mall Nashville | Green Hills Mall TRG LLC |
| G-Star Inc. | 1 | Lower Broadway | 441 Broadway LLC |
| G- Star RAW Retail Inc. | | Newport Beach | The Irvine Company, LLC |
| G-Star Inc. | | NYC Office | Shaherison 599 Co., LLC |
| G- Star RAW Retail Inc. | | Outlet Clarksburg | Clarksburg Premium Outlets |
| G- Star RAW Retail Inc. | | Outlet Denver | Denver Premium Outlets |
| G- Star RAW Retail Inc. | | Outlet Desert Hills | Premium Outlet Partners LLC |
| G- Star RAW Retail Inc. | 2 | Outlet Las Vegas | Las Vegas North Premium Outlets |
| G- Star RAW Retail Inc. | | Outlet San Francisco Livermore | Livermore Premium Outlets, LLC |
| G- Star RAW Retail Inc. | | Outlet Woodbury Commons | Simon Property Group-CPG Partners |
| G- Star RAW Retail Inc. | | San Francisco - Geary Street | Geary-Grant LLC |
| G- Star RAW Retail Inc. | | Santa Monica | Santa Monica Place |
| G-Star Inc. | 1 | Soho | Hampton Management Co., LLC |
| G- Star RAW Retail Inc. | | Store Arden Fair Sacramento | Macerich |
| G- Star RAW Retail Inc. | 3 | Store Cherry Hill Center | Cherry Hill Center, LLC |
| G- Star RAW Retail Inc. | | Store Fifth Avenue New York | 475 Fifth Ave |
| G- Star RAW Retail Inc. | | Store Las Vegas Fashion Show mall | Fashion Show Mall, LLC |
| G- Star RAW Retail Inc. | | Store Newport Centre Jersey City | Newport Centre LLC |
| G- Star RAW Retail Inc. | | Store Ross Park Pittsburgh | PENN ROSS JOINT VENTURE |
| G- Star RAW Retail Inc. | | Store Valley Fair Santa Clara | Valley Fair Mall, LLC |
| G- Star RAW Retail Inc. | | Store Westchester Mall White Plains New York | Westchester Mall, LLC |
| G- Star RAW Retail Inc. | | Williamsburg | CAB Bedford LLC |

**Notes:**

1 - The Debtors have included in the list of leases to be rejected the store located known as SoHo and Lower Broadway. This is despite the fact that no written lease exists between either Debtor and the landlord with respect to these stores.

2 - The Outlet Las Vegas sore lease terminated as of June 30, 2020.

3 - The Debtors have handed back the store known as Store Cherry Hill Center to the Landlord prior to the lease termination of July 15, 2020.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Arent Fox LLP, Gas Company Tower, 555 West Fifth Street, 48th Floor, Los Angeles, CA 90013.

A true and correct copy of the foregoing document entitled (*specify*): **MOTION FOR ORDER AUTHORIZING REJECTION OF CERTAIN LEASES AND ABANDONMENT OF PERSONAL PROPERTY IN CONNECTION THEREWITH; DECLARATION OF NICOLE CLAYTON AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) **07/09/2020,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **0709/2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**JUDGE**

Honorable Julia W. Brand
United States Bankruptcy Court
255 E. Temple Street, Suite 1382
Los Angeles, CA 90012

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 07/09/2020 | AYLIN SOOKASSIANS | /s/ Aylin Sookassians |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

AFDOCS/22506338.1
AFDOCS/22506338.1

**1**. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

M Douglas Flahaut on behalf of Debtor G-Star Inc.
flahaut.douglas@arentfox.com

M Douglas Flahaut on behalf of Debtor G-Star Raw Retail Inc.
flahaut.douglas@arentfox.com

Gregory Kent Jones (TR)
gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com

Dare Law on behalf of U.S. Trustee United States Trustee (LA)
dare.law@usdoj.gov

Aram Ordubegian on behalf of Debtor G-Star Raw Retail Inc.
ordubegian.aram@arentfox.com

Kristen N Pate on behalf of Creditor Brookfield Properties Retail, Inc.
ggpbk@ggp.com

Ronald M Tucker, Esq on behalf of Creditor Simon Property Group, Inc.
rtucker@simon.com, cmartin@simon.com;psummers@simon.com;Bankruptcy@simon.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Christopher K.S. Wong on behalf of Debtor G-Star Inc.
christopher.wong@arentfox.com, yvonne.li@arentfox.com

Christopher K.S. Wong on behalf of Debtor G-Star Raw Retail Inc.
christopher.wong@arentfox.com, yvonne.li@arentfox.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                                **F 9013-3.1.PROOF.SERVICE**

AFDOCS/22506338.1
AFDOCS/22506338.1