Brian D. Huben, Cal. Bar No. 134354
Jessica M. Simon, Cal. Bar No. 277581
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400
Facsimile: 424.204.4350
E-mail: hubenb@ballardspahr.com
E-mail: simonjm@ballardspahr.com

Attorneys for Landlords affiliated with
The Macerich Company and Unibail-Rodamco-Westfield

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>G-STAR RAW RETAIL INC., a Delaware corporation,<br><br>      Debtor and Debtor-in-Possession<br>_____<br><br>In re<br><br>G-STAR INC., a Delaware corporation,<br><br>      Debtor and Debtor-in-Possession<br>_____<br><br>[x] Affects both Debtors | Chapter 11<br><br>Lead Case No.: 2:20-bk-16040-WB<br><br>Jointly administered with<br>Case No.: 2:20-bk-16041-WB<br><br>**LIMITED OBJECTION OF LANDLORDS TO DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED AUGUST 27, 2020**<br><br><u>Confirmation Hearing</u><br>DATE:   October 8, 2020<br>TIME:   10:00 a.m. (PDT)<br>PLACE:  Courtroom 1375<br>            255 E. Temple Street<br>            Los Angeles, CA 90012 |

Landlords The Macerich Company and Unibail-Rodamco-Westfield (collectively, the "<u>Landlords</u>"), submit this limited objection (the "<u>Objection</u>") to the Joint Chapter 11 Plan of Reorganization Dated August 27, 2020 (*see* Docket No. 98; the "<u>Plan</u>")[1] of the debtors G-Star Raw Retail Inc. and G-Star Inc. (the "<u>Debtors</u>"), as follows:

---

[1] Capitalized terms used but not otherwise defined here shall have the meanings ascribed to them in the Plan and accompanying documents.

## I. BACKGROUND FACTS

1. On July 3, 2020 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code to proceed under Subchapter V as "small business debtors." Debtors' cases are being jointly administered.

2. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[2]

3. On July 8, 2020, the Office of the United States Trustee appointed Gregory K. Jones as the Subchapter V trustee.

4. The Debtors lease (or leased) retail sales space (the "Premises") from the Landlords pursuant to unexpired leases of nonresidential real property (a "Lease," and collectively, the "Leases") at the locations (the "Centers") set forth on the attached Schedule A.

5. Each Lease is a lease "of real property in a shopping center" as that term is used in Section 365(b)(3). *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

6. On July 9, 2020, the Debtors filed a *Motion for Order Authorizing Rejection of Certain Leases and Abandonment of Personal Property in Connection Therewith* (the "Rejection Motion") [Dkt. No. 30]. Pursuant to the Rejection Motion, the Debtors rejected three of Landlords' Leases, including The Macerich Company's Leases at Arden Fair and Santa Monica Place and the Unibail-Rodamco-Westfield Leases at Westfield Valley Fair.

7. On August 27, 2020, the Debtors filed their Plan [Dkt. 98]. On September 16, 2020, the Debtors filed their Exhibits to the Plan [Dkt. 115]. Exhibit 3 to the Plan contains a *Schedule of Leases and Executory Contracts to be Assumed*, which includes Unibail-Rodamco-Westfield's Garden State Plaza Lease. In Exhibit 3, the Debtors provide a cure amount of $106,896.00 for the Garden State Plaza Lease.

---

[2] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

8. On September 11, 2020, the Landlord for Garden State Plaza filed a Proof of Claim for $112,680.87 [*see* Claim No. 40].[3]

## II. PLAN OBJECTIONS RELATED TO CURE (GARDEN STATE PLAZA LEASE)

### A. The Debtors' Proposed Cure to Garden State Plaza Fails to Account for All Obligations Due Under the Lease.

9. The Landlord for Garden State Plaza's cure amount, as compared to the Debtors' cure, is summarized below, and Landlord's cure is more fully detailed in its Proof of Claim (Exhibit 1).

| Landlord Entity | Center | Store No. | Debtors' Cure | Landlord's Cure[4] | Exhibit |
|---|---|---|---|---|---|
| Westland Garden State Plaza LP | Garden State Plaza | D1A | $106,896.00 | $112,680.87 | 1 |

10. In addition to the current outstanding rent and other monthly charges due under the Lease, in determining what must be paid as cure pursuant to Section 365(b), the charges referenced below must also be taken into consideration and paid by the Debtors, either as cure or when properly billed under the Lease.

### i. Year-end Adjustments and Reconciliations

11. In addition to rent and related monthly charges, attorneys' fees, costs and interest, some charges for which the Debtors bear responsibility under the Lease have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods. By way of example, the Debtors occupy retail space at the Center pursuant to a triple-net lease, where they typically pay rent and related lease charges in advance for each month. The Debtors pay fixed minimum

---

[3] Landlord respectfully requests this Court to take judicial notice, pursuant to Federal Rules of Evidence 201, as made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 9017, of the Garden State Plaza Proof of Claim, which is a matter of public record and attached hereto as Exhibit 1.

[4] The Landlord's Cure does not include charges that are billed or come due after the filing of this Objection or charges that are billed directly to the Debtors, including in some cases, real estate taxes. To the extent that Landlord is later billed for any amount due to the Debtors' failure to pay, Landlord reserves the right to amend the Objection to include such amounts. The Debtors must timely pay all rent and other lease charges as they come due under the Lease, and the Landlord reserves the right to payment (and amend this Objection to the extent necessary) for any amounts that come due under the Lease through the date of any cure payment.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("CAM") fees, annual percentage rent, and the like. Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end. The reconciliation compares the amounts estimated and paid against actual charges incurred at the respective Center. To the extent the estimated payments exceed actual charges, the result is a credit to the tenant. To the extent the estimated payments do not cover actual charges incurred under the Lease, the result is an additional amount (or debit) for which the tenant is liable. In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e., year-end reconciliations and adjustments that accrued through 2019 may not yet have been billed under the Lease, and such charges that are accruing for 2020 will not be billed until 2021). In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end. Since these accrued, but unbilled, charges are not yet due under the Lease, they do not create a current default that gives rise to a requirement of cure by the Debtors at this time.

### ii. Attorneys' Fees, Costs, and Interest

12. The Lease contains a provision for recovery of attorneys' fees, costs, and interest in the event the Landlords are required to take legal action to protect their interests. The Debtors are obligated to cure all defaults under the Lease, and compensate the Landlord for its actual pecuniary losses as a result of defaults under the Lease. *See* 11 U.S.C. § 365(b)(1)(A) and (B). The principle is well-recognized. In re LCO Enterprises, 12 F.3d 938, 941 (9th Cir. 1993); Elkton Associates v. Shelco Inc. (Matter of Shelco), 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured *all pre-petition defaults*).

13. The Debtors (or any assignee) take the Lease *cum onere* – subject to existing burdens. The Debtors cannot assume the favorable portions, and reject the unfavorable provisions, of the Lease. In re Washington Capital Aviation & Leasing, 156 B.R. 167,172 (Banks. E.D. Va. 1993). If forced to continue in the performance of the Lease, the Landlord is entitled to the full benefit of the bargain under the Lease with the Debtors. *See* Matter of Superior Toy and Mfg. Co., Inc., 78 F.3d 1169 (7th Cir. 1996). The "full benefit of the bargain"

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

principle has been held to require payment of interest. "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation than it is to a claim in bankruptcy. One of the purposes of Section 365 is to permit the debtors to continue in a beneficial contract; provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract." In re Entertainment, Inc., 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted; bankruptcy court allowed interest at 18%). Interest on pre-petition lease charges continues to run from the filing of the Debtors' petition and must be paid as a condition of the assumption of the Lease. *See* In re Skylark Travel, Inc., 120 B.R. 352055 (Bankr. S.D.N.Y. 1990). Interest calculations are therefore not cut short by the automatic stay, and payment of such interest is required to fully compensate Landlord for the Debtors' default under the Lease, and thus to properly assume the Lease. Finally, post-petition interest is allowable where such interest is provided for under the terms of the Lease. Cukierman v. Uecker (In re Cukierman), 265 F.3d 846, 853 (9th Cir. 2001).

14.     Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are also proper components of a cure claim, and the Debtors (or any successor) must satisfy these lease charges as part of the assumption or assumption and assignment of the Lease. In re Entertainment, Inc., 223 B.R. at 152 (citation omitted). There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. Id. 154. The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay). Id., *see also*, In re Crown Books Corporation, 269 B.R. 12 (Bankr. D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); Urban Retail Properties v. Loews Cineplex Entertainment Corporation, et al., 2002 WL 5355479 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition ... ."); Three Sisters Partners, L.L.C.

v. Harden (In re Shangra-La, Incorporated), 167 F.3d 843, 850 (4th Cir. 1999). The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law. Travelers Casualty & Surety Co. Of America v. Pacific Gas & Electric, 127 S. Ct. 1199, 1206 (2007).

### iii. The Cure Amounts Serve Only As Estimates.

15. Landlord can only provide the information presently available regarding amounts that the Debtors owe, while reserving the right to amend this limited objection as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorney fees, costs, interest, and year-end adjustments and reconciliations. There is no basis to impose upon the Landlord the equivalent of an administrative bar date, limiting its recourse to recover charges to which they are entitled under the Lease.

### B. The Debtors Should Pay Undisputed Cure Amounts Immediately.

16. Section 365(b)(1)(A) requires that the Debtors promptly cure outstanding balances due under the Leases upon assumption or assumption and assignment. Article VI of the Plan does not specify *when* cure will be paid (*e.g.*, the Effective Date or a later time). The undisputed portion of the cure amount of $106,896.00 should be paid immediately on the Effective Date of the Plan. To the extent there is a dispute over the remaining cure obligation of $5,784.87, the Debtors should escrow those disputed amounts, and the Court should set a status conference within thirty (30) days of the assumption or assumption and assignment of the Lease to deal with any disputes that remain unresolved after such period.

### III. PLAN OBJECTIONS RELATED TO RELEASES (ALL LEASES)

#### A. The Release Provisions of the Plan are Extremely Overbroad and Ambiguous

17. The expansive provisions related to releases, injunction, and liabilities are overbroad and ambiguous and compromise Landlords' rights to assert legitimate claims under the Leases that survive confirmation. For example, Article VII.A. of the Plan provides for a full release and satisfaction for the Debtors and Reorganized Debtors of all demands, liabilities,

claims, and interests that arose before the Effective Date, regardless of the filing of Proofs of Claim based on such debts or interests or a party's acceptance of the Plan, while Article VII.B. enjoins any actions of holders of such claims from pursuing actions against the Debtors or Reorganized Debtors, including actions for setoff rights (such as application of security deposits). Article VII.C. limits the Debtors' liability in connection with, among other things, the cases, administration of the estates, performance of the Plan, and distributions of cash pursuant to it. The breadth of these provisions appear to encompass all lease defaults, whether monetary or nonmonetary, such as indemnification for injuries occurring at the Premises, and obligations to pay year-end adjustments and reconciliations under the Garden State Plaza Lease which any assignee is obligated to pay.

18. The Debtors cannot use plan confirmation to avoid liability for Lease charges that accrue throughout the year, both prior to and after the Effective Date, or any obligations to indemnify Landlords in case of an injury at the Premises or for any other such liability. The Plan cannot extinguish the Landlords' rights under the Leases, and the Plan should specifically provide that Landlords can amend their claims to assert claims such as the above (including setoff rights), as and when they come due or are discovered in the ordinary course.

**B.    The Plan Cannot Modify Rights Under the Garden State Plaza Lease.**

19. For the Garden State Plaza Lease, any assignee must assume the Lease with all of the benefits and obligations. The Plan's releases appear to seek to avoid any such obligations. A debtor assumes its leases *cum onere*, or subject to existing burdens. In re Wash. Capital Aviation & Leasing, 156 B.R. 167,172 (Bankr. E.D. Va. 1993). In addition to all outstanding balances due under the assumed Lease as cure at the time of assumption, the Debtors assume, and must honor, other obligations under the Garden State Plaza Lease, regardless of when they arise. The Debtors cannot avoid these obligations through releases or waivers in their Plan. Further, any assumption must remain subject to all provisions of the Lease, including those provisions concerning use, radius, exclusivity, tenant mix and balance. This is consistent with Section 365(b) of the Bankruptcy Code.

20. Moreover, as discussed above, the Lease contains provisions that require the Debtors to indemnify Landlord with respect to various claims, which claims may not become known until after the assumption of the Lease (*i.e.*, personal injury claims at the Premises and damage to property by the Debtors or their agents). Any assumption of the Lease must be subject to the terms of the Lease, including the continuation of all indemnification obligations, regardless of when they arise.[5] Nothing in the Plan or Confirmation Order should act as a waiver or release of any indemnity or other rights and obligatiis that exist under the Lease.

### C. The Plan Cannot Limit Landlords' Setoff and Recoupment Rights

21. Article VII of the Plan limits Landlords setoff and recoupment rights, regardless of whether such rights are preserved in their Proofs of Claim. Landlords are entitled to exercise their rights to assert setoffs or recoupment irrespective of plan confirmation either defensively (such as in the case of a preference action), or in connection with the application of security deposit balances. Should Landlords have security deposits they are holding with respect to the Leases, they must be allowed to apply such security deposits to any outstanding pre-petition and rejection damages owing by the Debtors. See In re PPI Enterprises, Inc., 324 F.3d 197, 208 (3d Cir. 2003). Courts have held that Section 553 takes precedence over the discharge of Section 1141 and that plan confirmation does not steamroll a party's right to setoff. *See* Carolco Television Inc. v. Nat'l Broadcasting Co. (In re De Laurentiis Entertainment Group Inc.), 963 F.2d 1269 (9th Cir. 1992), *cert. denied* 506 U.S. 918 (1992) (setoff rights survive plan confirmation); see also In re Luongo, 259 F.3d 323, 333 (5th Cir. 2001). The same analysis applies to recoupment, which is similarly unaffected by a debtor's discharge. See In re Madigan, 270 B.R. 749, 754 (9th Cir. BAP 2001); see also Folger Adam Security, Inc. v. DeMatteis/MacGregor, JV, 209 F.3d 252, 257 - 261 (3rd Cir. 2000) (recoupment defense survives free and clear sale of debtor's assets). The Plan should not limit any ability of Landlords to assert setoff or recoupment rights.

---

[5] Any ability to assume the Garden State Lease is subject to the protections provided by section 365(b) and (f). Therefore, any assumption must be in accordance with all provisions of the Garden State Lease.

8

**LIMITED OBJECTION TO PLAN**

## IV. JOINDER

22. To the extent consistent with the objections expressed herein, Landlords join in the objections of other landlords.

## V. CONCLUSION

In order to preserve the rights of the Landlords, Landlords request that the protection requested by the Limited Objection be incorporated into any order confirming the Plan. Landlords also request that the Court provide such other and further relief as the Court deems just and proper.

Dated: September 24, 2020          **BALLARD SPAHR LLP**

By: /s/ Jessica M. Simon
      Jessica M. Simon

Attorneys for Landlords affiliated with
The Macerich Company and Unibail-Rodamco-Westfield

## **SCHEDULE A**

| | | |
|---|---|---|
| **THE MACERICH COMPANY** | | |
| Store No. 1286 | Arden Fair | Sacramento, CA |
| Store No. 166 | Santa Monica Place | Santa Monica, CA |
| **UNIBAIL-RODAMCO-WESTFIELD** | | |
| Store No. D1A | Westfield Garden State Plaza | Paramus, NJ |
| Store No. B311 | Westfield Valley Fair | Santa Clara, CA |

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2029 Century Park East, Suite 1400, Los Angeles, CA 90067-2915.

A true and correct copy of the foregoing document described as **LIMITED OBJECTION OF LANDLORDS TO DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED AUGUST 27, 2020** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document on **September 24, 2020**.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 24, 2020 | Tasha Hart | /s/ Tasha Hart |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                **F 9013-3.1.PROOF.SERVICE**