1  Aram Ordubegian (SBN 185142)
   M. Douglas Flahaut (SBN 245558)
2  Christopher K.S. Wong (SBN 308048)
   **ARENT FOX LLP**
3  555 West Fifth Street, 48th Floor
   Los Angeles, CA  90013-1065
4  Telephone:    213.629.7400
   Facsimile:    213.629.7401
5  aram.ordubegian@arentfox.com
   douglas.flahaut@arentfox.com
6  christopher.wong@arentfox.com

7  General Bankruptcy and Restructuring Counsel
   for Debtors and Debtors-In-Possession
8

9              **UNITED STATES BANKRUPTCY COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11                **LOS ANGELES DIVISION**

12  In re

13  **G-STAR RAW RETAIL INC.**, a Delaware            Lead Case No.: 2:20-bk-16040-WB
    corporation,
14                                                     Chapter 11
              Debtor and Debtor-in-Possession.
15
    -----------------------------------------------    Jointly Administered with
16                                                     Case No.: 2:20-bk-16041-WB
    In re
17                                                     **DEBTORS' FIRST AMENDED JOINT**
    **G-STAR INC.**, a Delaware corporation,           **CHAPTER 11 PLAN OF**
18                                                     **REORGANIZATION DATED**
              Debtor and Debtor-in-Possession.         **OCTOBER 1, 2020**
19
                                                       Original Confirmation Hearing
20  _____                Date:      October 8, 2020
                                                       Time:      10:00 a.m. (Pacific Time)
21  [x] Affects both Debtors.                          Place:     Courtroom 1375
    [ ] Affects G-Star Raw Retail Inc. only.                      255 E. Temple St.,
22  [ ] Affects G-Star Inc. only.                                 Los Angeles, CA 90012
23
              Debtors and Debtors-in-Possession.       Continued Confirmation Hearing
24                                                     Date:      October 29, 2020
                                                       Time:      10:00 a.m. (Pacific Time)
25                                                     Place:     Courtroom 1375
                                                                  255 E. Temple St.,
26                                                                Los Angeles, CA 90012
27

28

1
2
3

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................4

II. DATE OF PLAN CONFIRMATION HEARING ..............................................5

III. SUBCHAPTER V PLAN DISCLOSURES ......................................................5

    A.    Brief History of the Debtors' Business Operations .................................6

        1.    Debtors' Corporate Structure.......................................................6

        2.    Events During the Bankruptcy Cases ..........................................8

    B.    Liquidation Analysis.................................................................................10

    C.    Future Plan Projections ............................................................................10

IV. CLASSIFICATION AND TREATMENT OF CLAIMS UNDER THE JOINT PLAN ........10

    A.    Overview...................................................................................................10

        1.    Treatment of Unclassified Claims .............................................11

        2.    Treatment of Classified Claims and Interests ...........................15

V. MEANS OF EFFECTUATING THE JOINT PLAN AND OTHER PROVISIONS...............17

    A.    Funding for the Joint Plan........................................................................17

    B.    Composition and Management of Reorganized G-Star and Reorganized G-Star Retail ...............................................................................................17

    C.    Disbursing Agent .....................................................................................17

    D.    Objections to Claims ................................................................................18

    E.    Estimation of Claims ...............................................................................18

    F.    Distributions to be Made Pursuant to the Joint Plan...............................18

    G.    Fractional Dollars, *De Minimis* Distributions.........................................19

VI. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................19

    A.    Executory Contracts and Unexpired Leases Being Assumed..................19

    B.    Executory Contracts and Unexpired Leases Being Rejected ..................20

VII. EFFECT OF CONFIRMATION OF THE JOINT PLAN .............................21

    A.    Discharge ..................................................................................................21

    B.    Injunction .................................................................................................21

    C.    Limitation of Liability ..............................................................................22

    D.    Releases ....................................................................................................23

        1.    Releases by the Estates ..............................................................23

        2.    Compromise Under Fed. R. Bankr. P. 9019 ..............................23

    E.    Revesting of Property in the Reorganized Debtors .................................24

    F.    Preservation of Claims and Rights Not Otherwise Expressly Settled, Released, Assigned, or Waived ................................................................25

1.      Retention of Claims and Defenses..................................................25

2.      Unknown Retained Claims and Defenses / No Preclusion.......................26

G.      Corporate Actions ...................................................................26

H.      Modification of the Joint Plan ....................................................27

I.      Changes in Rates Subject to Regulatory Commission Approval .........................27

J.      Retention of Jurisdiction............................................................27

VIII. MISCELLANEOUS PROVISIONS....................................................................29

A.      Post-Confirmation Status Report ..................................................29

B.      Post-Confirmation Conversion/Dismissal .........................................29

C.      Payment Dates .......................................................................29

D.      Other Documents and Actions ....................................................30

E.      The Confirmation Order Controls ................................................30

F.      Successors and Assigns ............................................................30

G.      Final Decree .........................................................................30

IX. DEFINED TERMS.................................................................................30

X. RULES OF INTERPRETATION.....................................................................37

**EXHIBIT 1 LIQUIDATION ANALYSIS** ........................................................39

**EXHIBIT 2 PLAN PROJECTIONS**.............................................................40

**EXHIBIT 3 SCHEDULE OF ASSUMED LEASES AND EXECUTORY
CONTRACTS FOR G-STAR RAW RETAIL INC.** ......................................41

**EXHIBIT 4 SCHEDULE OF ASSUMED LEASES AND EXECUTORY
CONTRACTS FOR G-STAR INC.** .................................................42

**EXHIBIT 5 SCHEDULE OF REJECTED LEASES AND EXECUTORY
CONTRACTS FOR G-STAR RAW RETAIL INC.** ......................................43

**EXHIBIT 6 SCHEDULE OF REJECTED LEASES AND EXECUTORY
CONTRACTS FOR G-STAR INC.** .................................................44

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/22814961.1

# I.

## **INTRODUCTION**

The above-captioned debtors and debtors-in-possession in these Cases,[1] G-Star Raw Retail Inc. ("G-Star Retail") and G-Star Inc. ("G-Star"), respectfully propose their joint Chapter 11 plan of reorganization pursuant to Sections 1191 and 1129 of Bankruptcy Code.

This Joint Plan provides creditors and interest holders of the Debtors with information to enable them to make an informed judgment concerning the method by which the Debtors plan to reorganize and emerge from bankruptcy.  **If the Court confirms the Joint Plan, it will be binding on the Debtors, their creditors, equity holders, and other interested parties.**

This Joint Plan provides for a comprehensive reorganization of the Debtors to preserve their going concern value and future business.  This Joint Plan proposes to pay creditors using the Net Disposable Income of the Debtors over the five-year period after the Effective Date.  The Joint Plan will allow non-insider General Unsecured Creditors to recover 1.25 times more than if the Debtors' assets were sold in a hypothetical Chapter 7 liquidation and the proceeds paid out to each Debtor's respective creditors.

The Effective Date of this Joint Plan will be the first Business Day which is at least fourteen (14) days following the date of the entry of the Confirmation Order, assuming there has not been an appeal from, or order staying the effectiveness of, the Confirmation Order. Notwithstanding this, the Debtors may at their sole discretion waive the fourteen (14) day requirement and go effective at any time after confirmation of the Joint Plan.

The Debtors believe this Joint Plan represents the best possible return to holders of Claims.  The Debtors believe this Joint Plan will successfully reorganize the Debtors and that confirmation of the Joint Plan is in the best interests of the Debtors, their Creditors, and equity interest holders.  **Accordingly, the Debtors strongly urge you to vote in favor of this Joint Plan.**

---

[1] Capitalized terms used herein are defined in Section IX below.

**II.**

**<u>DATE OF PLAN CONFIRMATION HEARING</u>**

Pursuant to Section 1128 of the Bankruptcy Code, a Confirmation Hearing will be held on October 8, 2020 at 10:00 a.m. Pacific Time, in Courtroom 1375, 255 E. Temple St., Los Angeles, CA 90012.  The Court may adjourn the Confirmation Hearing from time to time without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

Any objection to confirmation of the Joint Plan must be made in writing and specify in detail the name and address of the objecting party, all grounds for the objection and the amount of the claim or number of shares of stock held by the objecting party.  Any such objection must be filed with the Court and served so that it is received by the Court, the Office of the United States Trustee, the Subchapter V Trustee, and the Reorganization Counsel, on or before September 24, 2020.  Objections to confirmation of the Joint Plan are governed by Bankruptcy Rule 9014.

Failure by a creditor or interest holder to timely file an objection to the Joint Plan or timely cast a ballot in accordance with the Joint Plan Scheduling Order shall constitute an agreement by silence to accept the terms contained in this Joint Plan.

Any interested party desiring further information about the Joint Plan should contact counsel of record for the Debtors, M. Douglas Flahaut of Arent Fox LLP, 555 West Fifth Street, 48th Floor, Los Angeles, California 90013, telephone: (213) 629-7400, facsimile: (213) 629-7401; email: douglas.flahaut@arentfox.com.

**III.**

**<u>SUBCHAPTER V PLAN DISCLOSURES</u>**

Section 1190(1) of the Bankruptcy Code requires Subchapter V plans to include: (i) a brief history of the business operations of the debtor; (ii) a liquidation analysis; and (iii) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization.

**A.**    **Brief History of the Debtors' Business Operations**

**1.**    **Debtors' Corporate Structure**

Debtor G-Star is a wholly-owned U.S. subsidiary of G-Star Raw C.V. which is based in the Netherlands (the "Parent").    In turn, G-Star has two wholly-owned subsidiaries – G-Star Retail and G-Star Raw eStore Inc., as illustrated in the chart below.    While G-Star Raw eStore Inc. is a wholly owned subsidiary of G-Star, it has not sought bankruptcy protection.



(a)    The G-Star Brand

Founded in 1989, the philosophy of the G-Star Brand has always been, 'Just the Product.' This single-minded approach has led to many denim 'firsts': the introduction of 'luxury denim for the streets,' by fusing high-level craftsmanship with street level edge to create a new denim sector; the positioning of raw, untreated denim as a wearable and desirable material; and the evolution of its distinctive denim silhouette, through the adoption of architectural and 3-D thinking into denim construction.

Since launching in the United States, G-Star (through itself and its subsidiaries) has been the exclusive distributor of G-Star products in the U.S. market.    The U.S. entities including the Debtors have been granted the exclusive right to distribute G-Star branded products in the U.S. through a detailed distribution and licensing agreement with the Parent, whereby G-Star purchases its merchandise from the Parent for resale through wholesale channels and, via its subsidiaries G-Star Retail and non-debtor G-Star Raw eStore.    In this manner, the Debtors have carried the G-Star brand and its core philosophy into the U.S. market.

The Debtors advertise, market, and distribute G-Star products and other merchandise through retail and wholesale channels throughout the United States.    As is customary for a

1    company of its size and scale, the Debtors maintain a business relationship and enter into

2    transactions with the Parent in the ordinary course of business.  Specifically, all of the Debtors'

3    merchandise are G-Star products, which the Debtors purchase in the ordinary course of business

4    from the Parent for resale in the United States.  The Debtors' domestic supply chain, logistics,

5    and warehousing are primarily handled by Port Logistic Group and UPS, who deliver the

6    products between and among the warehouse, the Debtors' retail locations, and the Debtors' third-

7    party wholesale partners.

8                    (b)    <u>G-Star Retail</u>

9        G-Star Retail generally encompasses the brick and mortar retail operations in the United

10    States with a flagship store operating on Rodeo Drive in Beverly Hills.  Prior to the COVID-19

11    global pandemic, G-Star Retail operated approximately 31 stores across 12 states.  Unfortunately,

12    on account of the global pandemic, G-Star Retail was forced to shutter its stores and lay off all of

13    its retail employees and a majority of its corporate employees.  Additionally a number of its stores

14    was also adversely affected by the recent civil unrest and a significant amount of inventory in the

15    affected stores was looted.

16        While the Debtors have been concerned with the profitability of many of G-Star Retail's

17    brick and mortar retail locations for some time, the onset of the COVID-19 global pandemic

18    accelerated the need for a 'right-sizing' of G-Star Retail, and it had no choice but to close its

19    unprofitable locations and reject the associated leases immediately as part of these restructuring

20    proceedings as further described in Section II.2(d)

21                    (c)    <u>G-Star Inc.</u>

22        G-Star is the main United States member of the international G-Star brand family of

23    companies and sells and distributes merchandise directly through its wholesale operations and

24    indirectly through its wholly-owned subsidiaries.

25        On the wholesale side, G-Star has valuable relationships nationwide with retailers such as

26    department stores, specialty retailers and boutiques, and other retailers through which their

27    products are sold, including Macy's, Bloomingdale's, Nordstrom Rack, Saks Fifth Avenue,

28    Neiman Marcus, etc.    In 2019, the Debtors' wholesale operations generated net sales of

1  approximately $30 million, comprising approximately 43% of their 2019 net sales.

2      G-Star also supports G-Star Raw eStore, the non-filing subsidiary which provides the U.S.

3  e-commerce channel.  G-Star Raw eStore sells G-Star products on the internet through the

4  website: https://www.g-star.com/en_us.

5      **2.    Events During the Bankruptcy Cases**

6          (a)    Commencement of the Cases

7      On July 3, 2020 (the "Petition Date"), the Debtors filed their voluntary petitions under

8  chapter 11 of the Bankruptcy Code and have elected to proceed under Subchapter V as "small

9  business debtors."  Since then, the Debtors have been operating as debtors-in-possession.  On or

10  about July 8, 2020, the Office of the United States Trustee appointed Gregory K. Jones as the

11  Subchapter V trustee of the Cases pursuant to 11 U.S.C. § 1183(a).

12      As described in detail in the *Declaration Of Nicole Clayton In Support Of Emergency*

13  *First Day Motions* [Dkt. No. 10] (the "First Day Declaration"), the Debtors filed for bankruptcy

14  with the intent of aggressively pursuing an exit strategy to resolve their issues and emerge from

15  chapter 11 in a relatively short time.[2]

16          (b)    The 'First Day' Motions

17      Along with their Chapter 11 petitions, the Debtors filed a number of 'first day' motions

18  seeking relief which the Debtors believe is necessary to avoid irreparable harm in the early days

19  of these cases, enable them to efficiently administer their estates and continue to operate with

20  minimal disruption and loss of value during these Cases, and to ensure the best outcome for the

21  Debtors, the Estates, and their Creditors (collectively, the "First Day Motions").  At the hearing

22  held on July 8, 2020, the Bankruptcy Court granted substantially all of the relief requested in the

23  First Day Motions and entered final orders authorizing the Debtors to:

24      i.    operate in these Cases as jointly administered debtors [Dkt. No. 17];[3]

25      ii.    honor certain prepetition employee benefits and wages in the ordinary course of

26          business [Dkt. No. 21];

---

[2] Unless otherwise indicated, docket numbers in this Joint Plan are in reference to the docket in the lead case, Case No.: 2:20-bk-16040-WB.
[3] An identical motion was filed in the bankruptcy case of G-Star, Inc. *See* Case No. 2:20-bk-16041-WB, Dkt. No. 3.

iii.   prohibit utilities from altering, refusing, or discontinuing service [Dkt. No. 22];

iv.   honor certain prepetition obligations to customers and to otherwise continue customer programs and practices [Dkt. No. 23];

v.   pay prepetition sales taxes in the ordinary course of business and direct banks and financial institutions to honor and process checks and related transfers [Dkt. No. 24]

vi.   extend time to file Schedules of Assets and Liabilities and Statement of Financial Affairs and related materials [Dkt. No. 25]; and

vii.   maintain existing bank accounts [Dkt. No. 29].

(c)   Employment of Professionals

The Court has approved the employment of the following estate professionals:

| Name | Role | Date Employment was Authorized by the Court |
| --- | --- | --- |
| Arent Fox LLP | General Bankruptcy and Restructuring Counsel for the Debtors | August 21, 2020 |
| Ryniker Consultants LLC | Financial Advisor for the Debtors | August 19, 2020 |
| Seyfarth Shaw LLP | Special Employment and Litigation Counsel for the Debtors | August 21, 2020 |

(d)   'Right-Sizing' of the Debtors' Lease Portfolios

As of the Petition Date, the retail store footprint included approximately thirty-one (31) unexpired non-residential real property leases. The Debtors determined in their sound business judgment to seek the authority to reject twenty-five (25) leases[4]. To that end, on or about July 9, 2020, the Debtors filed their *Motion for Order Authorizing Rejection of Certain Leases and Abandonment of Personal Property in Connection Therewith* [Dkt. No. 30] (the "Rejection Motion"). The Rejection Motion was granted at the hearing held on July 30, 2020, and the Court entered its order authorizing the rejection of those twenty-five (25) designated leases, as identified on Exhibit 1 to the Rejection Motion, as well as the abandonment of remaining personal property at the associated locations [Dkt. No. 72].

---

[4] Subsequently the Debtor has agreed in principal to modifications respect to one of the previously rejected leases and expects to file a stipulation shortly seeking to vacate the rejection solely as to this store/lease.

(e)    Administrative Matters

The Debtors timely submitted their 7-Day Package to the Office of the United States Trustee and filed their Schedules, Statements of Financial Affairs, and related documents, within the extended time allowed by the Bankruptcy Court.[5]  On August 5 2020, the Debtors attended the 341(a) Meeting of Creditors, which was concluded on the same date.

The Debtors are current on their reporting obligations with the Office of the United States Trustee (through end of July 2020).  The Bankruptcy Court established September 11, 2020 as the general claims bar date in these cases.

**B.    Liquidation Analysis**

To confirm the Joint Plan, the Court must find that all Creditors and Interest holders who do not accept the Joint Plan will receive at least as much under the Joint Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation.  This is known colloquially as the 'best interest of creditors test.'   A liquidation analysis describing estimated distributions in a hypothetical Chapter 7 liquidation for both Debtors is attached hereto as **Exhibit 1**.  Because this Joint Plan proposes to pay General Unsecured Creditors of each Debtor an amount equal to 1.25 times the estimated distributions such creditors would receive in a hypothetical Chapter 7 liquidation, the 'best interest of creditors test' is satisfied.

**C.    Future Plan Projections**

The Debtors must show they have sufficient cash over the life of the Joint Plan to make the contemplated payments under the Joint Plan.  Five-year plan projections for each Debtors are attached hereto as **Exhibit 2** and show the Debtors are expected to have sufficient cash to make the payments contemplated herein.

**IV.**

**CLASSIFICATION AND TREATMENT OF CLAIMS UNDER THE JOINT PLAN**

**A.    Overview**

As required by the Bankruptcy Code, the Joint Plan separately categorizes classes of Claims asserted against G-Star and G-Star Retail.  Claims and interests of each respective Debtor

---

[5] A supplement 7-Day Package was submitted to the Official of the United States Trustee on July 22, 2020.

are classified in separate and distinct classes according to their right to priority and other relative

rights in a way that comports with 11 U.S.C. Section 1112.

| Class | Description of Class | Voting Status |
|---|---|---|
| Class 1 | Non-Insider Convenience Claims Against G-Star Inc. and G-Star Raw Retail Inc. | Impaired.  Entitled to vote. |
| Class 2A | General Unsecured Claims Against G-Star Inc. | Impaired.  Entitled to vote. |
| Class 2B | General Unsecured Claims Against G-Star Raw Retail Inc. | Impaired.  Entitled to vote. |
| Class 3A | Equity Holders in G-Star Inc. | Unimpaired.  Not Entitled to vote. |
| Class 3B | Equity Holders in G-Star Raw Retail Inc. | Unimpaired.  Not Entitled to vote. |

**1.**    **Treatment of Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered Impaired and they do not vote on the Joint Plan because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code.  As such, the Joint Plan has not placed the following claims in a class:

(a)    Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the case that are allowed under 11 U.S.C. Section 507(a)(2).  Subject to the bar date provisions herein and additional requirements for Professionals and certain other entities set forth below, the Reorganized Debtors shall pay to each holder of an Allowed Administrative Claim, on account of its Allowed Administrative Claim and in full satisfaction thereof, cash equal to the allowed amount of such Administrative Claim within fourteen (14) days after the Effective Date or as soon as practicable thereafter, unless the holder agrees or shall have agreed to other treatment of such Claim.  Holders of Administrative Claims based on liabilities incurred post-petition in the ordinary course of business, including ordinary course professionals, shall not be required to file any request for payment of such Claims.  Such Administrative Claims shall be assumed and paid

1    pursuant to the terms and conditions of the particular transaction giving rise to such

2    Administrative Claim, without any further action by the holders of such Claims.

3        The following chart lists all of the known Section 507(a)(2) Administrative Claims of G-

4    Star and G-Star Retail and their treatment under the Joint Plan:

5

6

| Name | Amount Currently Owed | Amount Previously Paid | Treatment |
|---|---|---|---|
| Arent Fox LLP, General Bankruptcy Counsel for the Debtors | $250,0000 to $300,000 (est.)[6] | $0.00 | Paid in full on the Effective Date, unless claimant agrees to a different treatment.  Final claim amount pending order approving final fee application. |
| Gregory K. Jones, Subchapter V Trustee | $25,000 to $50,000 (est.) | $0.00 | Paid in full on the Effective Date, unless claimant agrees to a different treatment.  Final claim amount pending order approving final fee application. |
| Ryniker Consultants LLC Financial Advisor to the Debtors | $60,000 to $75,000 (est.)[7] | $0.00 | Paid in full on the Effective Date, unless claimant agrees to a different treatment.  Final claim amount subject to the terms of the order employing the Financial Advisor. |
| Seyfarth Shaw LLP, Employment and Litigation Counsel for the Debtors | $ 0 to $10,000 (est.) | $0.00 | Paid in full on the Effective Date, unless claimant agrees to a different treatment.  Final claim amount pending order approving final fee application. |
| Clerk's Office Fees | Unknown, but estimated to be less than $1,000 | N/A | Paid in full on the Effective Date. |
| **TOTAL** | $335,000 to $435,000 (est.) | | |

25        The Court must rule on all fees and costs of estate professionals listed in this chart before

26

27    [6] As of the Petition Date, Arent Fox is holding a prepetition retainer in the amount of $279,246.50 which is expected to be applied to its allowed administrative claims.

28    [7] As of the Petition Date, Ryniker Consultants LLC is holding a prepetition retainer in the amount of 16,005 which is expected to be applied to its allowed administrative claims.

such fees will be allowed.  For each estate professional, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application.  Only the amount of fees allowed by the Court for such professional will be required to be paid under the Joint Plan.  The Administrative Claim amounts set forth above simply represent the Debtors' best estimate as to the amount of Allowed Administrative Claims.  The actual allowed amount of Administrative Claims may be higher or lower.

(b)    Priority Tax Claims

Priority Tax Claims include certain unsecured income, employment and other taxes described by 11 U.S.C. Section 507(a)(8).  The Bankruptcy Code requires each holder of Section 507(a)(8) priority tax claim receive the present value of such claim in regular installment payments in cash (i) of a total value, as of the Effective Date of the Joint Plan, equal to the allowed amount of such claim; (ii) over a period ending not later than five (5) years after the Petition Date; and (iii) in a manner not less favorable than the most favored non priority unsecured claim provided for under the Joint Plan.  Allowed Priority Tax Claims will be paid by Reorganized Debtors in full quarterly over a four-year period beginning on the first Calendar Quarter Date after the Effective Date, with interest to accrue at a the Statutory Interest Rate.  All rights to object to any such Priority Tax Claims are hereby reserved.

The following chart lists all of Debtors' Section 507(a)(8) priority tax claims and their treatment under the Joint Plan.[8]  The chart is based on the filed and scheduled claims in these Cases.  Additionally, the Debtors will file all past due returns on or before the confirmation hearing on this Joint Plan.  The Debtors must timely file all post-petition tax returns and timely pay their post-petition taxes.

| Description | Amount Owed | Treatment |
| --- | --- | --- |
| | | |

---

[8] The chart is for informational purposes only and is not an admission as to the validity of any particular claim.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/22814961.1

| Description | Amount Owed | Treatment |
|---|---|---|
| Internal Revenue Service (against G-Star Retail Only) | $388,813.86 (est.) | Paid by Reorganized G-Star Retail in quarterly installments over a four-year period beginning on the first Calendar Quarter Date after the Effective Date, with interest to accrue at the Statutory Interest Rate. |
| Internal Revenue Service (against G-Star Only) | $493,648.28 (est.) | Paid by Reorganized G-Star in quarterly installments over a four-year period beginning on the first Calendar Quarter Date after the Effective Date, with interest to accrue at the Statutory Interest Rate. |
| Los Angeles County Treasurer and Tax Collector (against G-Star Retail Only) | $1,812.26 (est.) | Paid by Reorganized G-Star Retail in quarterly installments over a four-year period beginning on the first Calendar Quarter Date after the Effective Date, with interest to accrue at the Statutory Interest Rate. |
| Los Angeles County Treasurer and Tax Collector (against G-Star Only) | $1,854.37 (est.) | Paid by Reorganized G-Star in quarterly installments over a four-year period beginning on the first Calendar Quarter Date after the Effective Date, with interest to accrue at the Statutory Interest Rate. |
| New York State Department of Taxation & Finance (against G-Star Retail Only) | $56.36 (est.) | Paid by Reorganized G-Star Retail in quarterly installments over a four-year period beginning on the first Calendar Quarter Date after the Effective Date, with interest to accrue at the Statutory Interest Rate. |
| New York State Department of Taxation & Finance (against G-Star Only) | $465.72 (est.) | Paid by Reorganized G-Star in quarterly installments over a four-year period beginning on the first Calendar Quarter Date after the Effective Date, with interest to accrue at the Statutory Interest Rate. |
| Orange County Department of Revenue (against G-Star Retail Only) | $1,790.14 (est.) | Paid by Reorganized G-Star Retail in quarterly installments over a four-year period beginning on the first Calendar Quarter Date after the Effective Date, with interest to accrue at the Statutory Interest Rate. |
| **TOTAL** | **$888,440.99 (est.)** | |

(c)    Priority Non-Tax Claims, If Any

Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in a class or classes. These types of claims are entitled to

1  priority treatment as follows: each holder of a Priority Non-Tax Claim shall receive cash equal to

2  the allowed amount of such Priority Non-Tax Claim from the Debtors on the Effective Date or as

3  soon as practicable thereafter, unless the holder agrees or shall have agreed to other treatment

4  with respect to such Claim.

5      **2.**    **Treatment of Classified Claims and Interests**

6      (a)    <u>Class 1 – Allowed Convenience Class Claims Against G-Star and G-Star</u>

7      <u>Retail</u>

8  Class 1 consists of holders of an Allowed Unsecured Claim that is less than or equal to

9  $1,000.00, other than an Administrative Expenses Claim, a Priority Tax Claim, a Priority Non-

10  Tax Claim, or a Secured Claim.  Class 1 also consists of those holders of Allowed General

11  Unsecured Claims that choose to reduce their Allowed Claims to $1,000.00.

12  Each holder of an Allowed Convenience Class Claim shall receive a one-time payment

13  equaling fifty percent (50%) of such Allowed Convenience Class Claim within 14 days of the

14  Effective Date in complete satisfaction of such claim.

15  Holders of Claims in Class 1 are impaired and are entitled to vote on the Joint Plan.

16      (b)    <u>Class 2A – Allowed General Unsecured Claims Against G-Star</u>

17  Class 2A consists of Allowed General Unsecured Claims against G-Star.  Except to the

18  extent that the holder of an Allowed General Unsecured Claim agrees to less favorable treatment,

19  holders of Allowed Claims in this Class shall receive a *pro rata* share of the G-Star General

20  Unsecured Commitment payable over a period of five (5) years following the Effective Date,

21  without interest, in equal quarterly installments, with the first payment to be made on the first

22  Calendar Quarter Date after the Effective Date.

23  Furthermore, in the event the Joint Plan is fully consensual and in order to ensure the Joint

24  Plan satisfies the feasibility requirement of Bankruptcy Code Section 1129(a)(11) the Debtor

25  expects G-Star Raw C.V. to agree to defer payment on its General Unsecured Claims against G-

26  Star until other Class 2A creditors receive their *pro rata* distributions in full.

27  Notwithstanding the above, any holder of a Class 2A Allowed General Unsecured Claim

28  against G-Star can opt to reduce its Allowed Claim to $1,000 and participate in the Class 1

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/22814961.1

1  Convenience Class distribution as described above in lieu of treatment accorded to Class 2A

2  herein.

3          Holders of Claims in Class 2A are impaired and are entitled to vote on the Joint Plan.

4          (c)      <u>Class 2B – Allowed General Unsecured Claims Against G-Star Retail</u>

5          Class 2B consists of Allowed General Unsecured Claims against G-Star Retail.  Except to

6  the extent that the holder of an Allowed General Unsecured Claim agrees to less favorable

7  treatment, holders of Allowed Claims in this Class shall receive a *pro rata* share of the G-Star

8  Retail General Unsecured Commitment payable over a period of five (5) years following the

9  Effective Date, without interest, in equal quarterly installments , with the first payment to be

10  made on the first Calendar Quarter Date after the Effective Date.

11          Furthermore, in the event the Joint Plan is fully consensual and in order to ensure the Joint

12  Plan satisfies the feasibility requirement of Bankruptcy Code Section 1129(a)(11) Debtor G-Star,

13  Inc. agrees to defer payment on its General Unsecured Claims against G-Star Retail until other

14  Class 2A creditors receive their *pro rata* distributions in full.

15          Notwithstanding the above, any holder of a Class 2B Allowed General Unsecured Claim

16  against G-Star Retail can opt to reduce its Allowed Claim to $1,000 and participate in the Class 1

17  Convenience Class distribution as described above in lieu of treatment accorded to Class 2B

18  herein.

19          Holders of Claims in Class 2B are impaired and are entitled to vote on the Joint Plan.

20          (d)      <u>Class 3A – Interest Holders in G-Star</u>

21          Class 3A consists of Person(s) who hold Interest (*i.e.*, equity) in G-Star.  Interest holders

22  of G-Star will receive and retain the equity interests in the Reorganized G-Star.

23          Interest holders in this Class are not impaired and are not entitled to vote on the Joint Plan.

24          (e)      <u>Class 3B – Interest Holders in G-Star Retail</u>

25          Class 3B consists of Person(s) who hold Interest (*i.e.*, equity) in G-Star Retail.  Interest

26  holders of the G-Star Retail will receive and retain the equity interests in the Reorganized G-Star

27  Retail.

28          Interest holders in this Class are not impaired and are not entitled to vote on the Joint Plan.

## V.

## MEANS OF EFFECTUATING THE JOINT PLAN AND OTHER PROVISIONS

### A.    Funding for the Joint Plan

Distributions to creditors under the Joint Plan will be funded primarily from the following sources: (a) the Debtors' cash on hand on the Effective Date, and (b) the net income derived from the continued operation of the Debtors' business.  A schedule showing the projected disposable income which is expected to be available for payment to creditors is attached as **Exhibit 2**.  In order to ensure operations can continue, and provided the plan is fully consensual, G-Star expects the Parent will commit to honor its distribution agreement with the G-Star for the life of the Joint Plan without requiring G-Star to cure any pre-petition monetary defaults.  Similarly, provided the Joint Plan is fully consensual and the Parent honors its distribution agreement with G-Star, G-Star commits to honor its distribution agreement with G-Star Retail for the life of the Joint Plan without requiring G-Star Retail to cure any pre-petition monetary defaults.

### B.    Composition and Management of Reorganized G-Star and Reorganized G-Star Retail

The Debtors will become the Reorganized Debtors on the Effective Date.  The Reorganized Debtors shall be responsible for managing their assets and financial affairs.  On the Effective Date, the Parent will become the sole shareholder of Reorganized G-Star, and Reorganized G-Star will become the sole shareholder of Reorganized G-Star Retail.  On the Effective Date, the Debtors' directors and officers shall remain the directors and officers of the Reorganized Debtors.

### C.    Disbursing Agent

Reorganized G-Star shall serve as the Disbursing Agent for all obligations of Reorganized G-Star under this Joint Plan and shall not be compensated for its services as a disbursing agent. Reorganized G-Star Retail shall serve as the Disbursing Agent for all obligations of Reorganized G-Star Retail under this Joint Plan and shall not be compensated for its services as a disbursing agent.

**D.** **Objections to Claims**

The Debtors or the Reorganized Debtors, as the case may be, and any party in interest may review all Claims filed or deemed filed and may object to or seek subordination of any Claim filed or scheduled in these Cases. The Claims Objection Deadline shall be ninety (90) days after the Effective Date and any claim objection must be filed within that deadline unless a motion to extend the Claims Objection Deadline is filed prior to the expiration of such deadline and an order is ultimately entered extending such deadline. The Court shall retain jurisdiction over the Cases to resolve such objections to claims following the confirmation of the Joint Plan. Nothing contained in this Joint Plan shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any rights of setoff or recoupment, or of any defense a creditor may have with respect to any claim.

**E.** **Estimation of Claims**

The Debtors or the Reorganized Debtors may, at any time, request that the Court estimate any contingent, unliquidated or disputed Claim pursuant to 11 U.S.C. Section 502(c) regardless of whether the Debtors or the Reorganized Debtors previously objected to such claim or whether the Court has ruled on any such objection, and the Court will retain jurisdiction to estimate any claim at any time during litigation concerning any objection to any claim, including during the pendency of any appeal relating to any such objection. In the event that the Court estimates any contingent, unliquidated or disputed claim, that estimated amount will constitute either the allowed amount of such claim or a maximum limitation on such claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on such claim, the Debtors or the Reorganized Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such claim.

**F.** **Distributions to be Made Pursuant to the Joint Plan**

Distributions to be made to holders of Allowed Claims shall be made as set forth in Section IV above. Distributions to be made under the Joint Plan shall be made by check drawn on a domestic bank or by wire transfer, at the sole election of the applicable Disbursing Agent.

Except as otherwise agreed upon by the applicable Disbursing Agent in writing,

distributions to be made to holders of Allowed Claims pursuant to this Joint Plan may be delivered by regular mail, postage prepaid, to the address shown in the Debtors' Schedules, as they may from time to time be amended in accordance with Rule 1009 of the Federal Rules of Bankruptcy Procedure, or if a different address is stated in a proof of claim duly filed with the Court, to such address.  Nothing contained in the Joint Plan shall require a Disbursing Agent or the Reorganized Debtors to attempt to locate any holder of an Allowed Claim.

Checks issued by a Disbursing Agent to pay Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof (the "Claiming Period"). Requests for reissuance of any check shall be made to the applicable Disbursing Agent or the Reorganized Debtors as the case may be by the holder of the Allowed Claim to whom such check originally was issued, within sixty (60) days after the original date of issuance.   After the expiration of the sixty (60) days, the unclaimed property held on account of such voided check or such claim shall revest in the applicable issuing Disbursing Agent free and clear of all claims and interests.

**G.**     **Fractional Dollars, _De Minimis_ Distributions**

Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made.  Whenever any payment of a fraction of a dollar under the Joint Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down) with half dollars being rounded down.  The applicable Disbursing Agent shall have the discretion not to make payments of less than twenty-five dollars ($25) on account of any Allowed Claim, unless a specific request is made in writing to the applicable Disbursing Agent or the Reorganized Debtor as applicable on or before ninety (90) days after allowance of such claim.

**VI.**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.**     **Executory Contracts and Unexpired Leases Being Assumed**

Attached hereto as **Exhibit 3** and **Exhibit 4** are the schedules of executory contracts and unexpired leases that Reorganized G-Star Retail and Reorganized G-Star respectively intend to

assume on the Effective Date with any necessary Cure Amounts paid in full within seven (7) days of the Effective Date.  The cure amounts reflected therein are subject to all defenses and disputes the Debtors or the Reorganized Debtors may have with respect to the underlying executory contracts or unexpired leases, which the Debtors or the Reorganized Debtors may assert in the ordinary course.  As reflected on **Exhibit 3**, on the Effective Date, G-Star Inc. will assume and assign to G-Star Retail that certain unexpired lease for the premises located at 19501 Biscayne Boulevard, Rm. No. 1926, Aventura, Florida 33180.

Unless the counterparty to any such executory contract or unexpired lease to be assumed files and serves on Reorganization Counsel an objection to such assumption, assignment and/or the cure amount specified on **Exhibit 3** and **Exhibit 4** on or before the last date established by the Court to file and serve objections to confirmation of the Joint Plan, such assumption, assignment and cure amount shall be forever binding on such non-debtor party to said executory contract or unexpired lease.

To the extent a dispute arises as to an assumption and/or the cure amount, such a dispute shall not delay confirmation of this Joint Plan or the Effective Date, provided that the corresponding Debtor or the Reorganized Debtor reserves cash in an amount sufficient to pay the full amount reasonably asserted as the required cure payment by the affected counterparty to such contract or lease, or such lesser amount as may be estimated by the Bankruptcy Court or otherwise agreed to by such counterparty and the Debtor or the Reorganized Debtor.

**B.**    **Executory Contracts and Unexpired Leases Being Rejected**

Attached hereto as **Exhibit 5** and **Exhibit 6** are the schedules of executory contracts and unexpired leases that Reorganized G-Star Retail and Reorganized G-Star respectively intend to reject pursuant to this Joint Plan, with such rejection effective as of the date of entry of the Confirmation Order.  **Any Claim for damages arising from the rejection of an executory contract or unexpired lease must be filed and served on Reorganization Counsel within fourteen (14) days after the Confirmation Order is entered or be (i) forever barred and unenforceable against the Debtors, the Estates, and their respective property, and (ii) barred from receiving any distribution under the Joint Plan.**  All Allowed Claims arising

AFDOCS/22814961.1

from the rejection of executory contracts or unexpired leases shall be treated as Class 1, 2A, or 2B General Unsecured Claims, as determined by whether the amount of the Allowed Claim exceeds $1,000, and whether the claim is asserted against G-Star or G-Star Retail.

Any executory contract or unexpired lease (i) which has not expired by its own terms on or prior to the Effective Date, or (ii) which has not been assumed or assigned or rejected with the approval of the Court or pursuant to procedure established by order of the Court shall be deemed rejected by the Estates on the Effective Date. The entry of the Confirmation Order by the Court shall constitute approval of such rejection pursuant to 11 U.S.C. Section 365(a) and 1123(b)(2).

<h2 style="text-align:center">VII.</h2>

<h2 style="text-align:center">EFFECT OF CONFIRMATION OF THE JOINT PLAN</h2>

**A.    Discharge**

On the Effective Date, the Debtors and the Reorganized Debtors, to the fullest extent permitted by 11 U.S.C. §§ 1141 and 1192, shall be deemed discharged and released from all claims and interests including, without limitation, demands, liabilities, claims, and interests that arose before the Effective Date and all debts of the kind specified in 11 U.S.C. Sections 502(g), 502(h), or 502(i) regardless of whether: (1) a proof of claim or proof of interest based on such debt or interest is filed or deemed filed; (2) a Claim or Interest based on such a debt or interest is allowable under 11 U.S.C. Section 502; or (3) the person holding the Claim or Interest based on such debt or interest has accepted the Joint Plan.

**B.    Injunction**

As of the Effective Date the Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to Joint Plan.

Except as provided in this Joint Plan or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold a claim or other debt or liability that is discharged or an interest or other right of an equity security holder that is terminated pursuant to the terms of the Joint Plan are permanently enjoined from taking any of the following actions

against the Debtors, the Reorganized Debtors, the Estates, a Disbursing Agent, or their properties on account of any such discharged claims, debts or liabilities or terminated interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors; and (v) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of the Joint Plan.

Notwithstanding anything to the contrary contained herein, and notwithstanding any of the releases, discharges, injunctions or waivers set forth herein, nothing herein or in the Confirmation Order shall modify the rights, if any, of any counterparty to an unexpired lease of non-residential real property to assert any right of setoff or recoupment that such counterparty may have under applicable bankruptcy or non-bankruptcy law.

**C.**    **Limitation of Liability**

The information contained herein has been prepared by the Debtors in good faith and was based upon unaudited information available to the Debtors as of the date hereof.  Although the Debtors have used reasonable efforts to ensure that information is accurate, the information contained herein is unaudited.

Until it is confirmed, the Joint Plan may not be relied on for any purpose other than to determine how to vote on the Joint Plan.  Additionally, nothing contained herein shall constitute an admission of fact or liability by any party, or be admissible in any proceeding involving the Debtors or any other party, or be deemed conclusive advise on tax or other legal effects of the Joint Plan on holders of claims against or interests in the Debtors.

To the maximum extent permitted by law, the Debtors, the Reorganized Debtors, the Disbursing Agents, and their current and future officers, directors, principals, agents, and professionals shall not incur and shall not have any liability to any entity for any action taken or omission made in connection with the Debtors' Cases or the administration of the Estates, including the formulation, dissemination, confirmation, approval or consummation of the Joint

Plan or any other document, instrument or agreement relating thereto, or in connection with the effectiveness or performance of the Joint Plan, or any distributions of cash or other property to the Joint Plan.

**D.    Releases**

**1.    Releases by the Estates**

For good and valuable consideration, on and after the Effective Date, the Released Parties shall be deemed to be conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Persons seeking to exercise the rights of the foregoing, from any and all claims, obligations, rights, suits, judgments, damages, demands, debts, rights, causes of action, remedies, losses, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, their Estates, or the Reorganized Debtors, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or fixed, existing or hereinafter arising, in law, equity or otherwise, that the Debtors, their Estates, the Reorganized Debtors, or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Persons, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, their Estates, the formation, operation, and conduct of the Debtors' businesses, the Cases, the negotiation, formulation, or preparation thereof, the solicitation of votes on the Joint Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including all Claims and causes of action under Chapter 5 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code or applicable federal or state law, including any preference or fraudulent transfer Claims or causes of action; provided that nothing in this release shall be construed to release any post-Effective Date obligations of any Persons under the Joint Plan.

**2.    Compromise Under Fed. R. Bankr. P. 9019**

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the compromises memorialized in the releases set forth

herein, and shall constitute the Bankruptcy Court's finding that the releases set forth in the Joint Plan are: (a) essential to the confirmation of the Joint Plan; (b) consensual; (c) given in exchange for good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating and implementing the Joint Plan; (d) a good faith settlement and compromise of the Claims released; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; and (g) given and made after due notice and opportunity for hearing.

**E.**    **Revesting of Property in the Reorganized Debtors**

Except as explicitly set forth herein, the Confirmation of the Joint Plan revests, as of the Effective Date, all property and causes of action of the respective Estates in the Reorganized Debtors.

On and after the Effective Date, the Reorganized Debtors may take any action, including, the operation of their businesses, including the use, acquisition, sale, lease and disposition of property. Reorganized Debtors shall have the option in their sole discretion to liquidate or sell substantially all of their assets free of restrictions of the Bankruptcy Code or Bankruptcy Rules in all respects, provided that in such case the Debtors shall (1) pay Allowed Claims in accordance with their treatment under this Joint Plan; or (2) pay the net proceeds of such sale to holders of Allowed Claims in the priority set forth in 11 U.S.C. § 507 on a *pro rata* basis.

In addition, on the Effective Date, as noted herein, all of the Claims against and/or Interests in third parties that constitute property of each Estate shall be revested in the respective Reorganized Debtor. Following the Effective Date, the Reorganized Debtors shall have absolute authority to prosecute, waive, adjust or settle any claims without the need for approval by the Court. Following the Effective Date, the Reorganized Debtors shall have the authority to employ such professionals as they deem necessary to prosecute or defend such claims asserted without the need for Court approval.

**F.** **Preservation of Claims and Rights Not Otherwise Expressly Settled, Released, Assigned, or Waived**

**1.** **Retention of Claims and Defenses**

Unless otherwise expressly set forth in the release provisions of this Joint Plan or the Confirmation Order, pursuant to Section 1123(b)(3)(B), all retained claims and defenses of any kind or nature whatsoever against third parties, arising before the Effective Date and belonging to each Debtor or Estate, except for those claims specifically assigned to a Disbursing Agent, shall become property of the respective Reorganized Debtor on the Effective Date.  Notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, analyze or refer to any such retained claims and defenses in the Joint Plan or any other document filed with the Bankruptcy Court will in no manner waive, eliminate, modify, release, or alter the right of the Reorganized Debtors or the applicable Disbursing Agent, as the case, to commence, prosecute, defend against, settle, and realize upon any retained claims and defenses that the Debtors or the Estates have or may have as of the Effective Date.  Retained claims and defenses shall include, without limitation:

- All claims and defenses pursuant to applicable non-bankruptcy law and Sections 502, 506, 524 and 553 of the Bankruptcy Code against any Creditor regarding the amount of such holder's Allowed Claim (whether prepetition or postpetition), to enforce the discharge of any Secured Creditors' Claims;

- All claims and defenses pursuant to applicable non-bankruptcy law and Sections 502, 506, 510, 524, 542 and 553 of the Bankruptcy Code including, without limitation, claims and defenses based on any Creditors' assertion of unreasonable professionals' fees, costs, charges and penalties (whether disguised as interest, or otherwise);

- All avoidance causes of action and objections to Claims under Sections 105, 502, 506, 510, 542 through 551 and 553 of the Bankruptcy Code that belong to the Debtors or to the Estates.

- All claims and defenses related to the recovery of professionals' fees and expenses by the Debtors from Creditors;

- All causes of action, including, but not limited to, claims relating to pre-confirmation and/or pre-petition conduct, including without limitation, claims for fraud, breach of fiduciary duty or negligence.

From and after the Effective Date, the Reorganized Debtors or the Disbursing Agents, as the case may be, are authorized to assert the retained claims and defenses including, but not limited to, for purposes of objection to the allowance of any Claim. Nothing contained in the Joint Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any of the Debtors' rights with respect to the retained Claims and defenses and the Reorganized Debtors or Disbursing Agents, as the case may be, shall be entitled to assert fully all retained rights and defenses.

### 2.    Unknown Retained Claims and Defenses / No Preclusion

Unless otherwise expressly set forth in the Joint Plan or the Confirmation Order, the reservation of rights and the retained claims and defenses set forth above shall include, without limitation, any retained claims and defenses of which the Debtors may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist including, without limitation, claims based on theories of construction defect, breach of warranty, negligence, indemnification and contribution. Therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, waiver, estoppel (judicial, equitable or otherwise), or laches will apply to the Reorganized Debtors or Disbursing Agents, as the case may be, with respect to the retained claims and defenses upon or after the Confirmation of the Joint Plan based on this Joint Plan or the Confirmation Order.

### G.    Corporate Actions

On the Effective Date, all actions contemplated by the Joint Plan shall be deemed authorized and approved in all respects (subject to the provisions of this Joint Plan) by virtue of the entry of the Confirmation Order, in accordance with the Bankruptcy Code and applicable state

law and without any requirement of further action by the Debtors, Reorganized Debtors, their shareholders, their officers or their directors.   All matters provided for under the Joint Plan involving the corporate structure of the Debtors and / or Reorganized Debtors and any corporate action required by in connection with the Joint Plan shall be deemed to have occurred and shall be in effect pursuant to the Bankruptcy Code, without any requirement of further action by the Debtors, Reorganized Debtors, shareholders, officers or directors of the Debtors or Reorganized Debtors.   On the Effective Date, Reorganized Debtors are authorized and directed to implement the provisions by the Joint Plan and any other agreements, documents and instruments contemplated by the Joint Plan.

**H.    Modification of the Joint Plan**

The Debtor reserves the right in accordance with Section 1193(a) of the Bankruptcy Code to amend or modify the Joint Plan at any time before confirmation.   However, the Court may require a re-voting on the Joint Plan, unless the modification is non-material or relates only to the extension of the Effective Date, which modification shall not require re-voting of the Joint Plan.

After confirmation, the Reorganized Debtors may, upon order of the Court, modify the Joint Plan in accordance with Section 1193(b) and (c) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistency in the Joint Plan in such manner as may be necessary to carry out the purposes and intent of the Joint Plan.

**I.    Changes in Rates Subject to Regulatory Commission Approval**

To the best of the Debtors' knowledge, neither Debtor is subject to governmental regulatory commission approval of its rates.

**J.    Retention of Jurisdiction**

After confirmation of the Joint Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Court will retain such jurisdiction as is legally permissible including for the following purposes:

1.  To resolve any and all disputes regarding the operation and interpretation of the Joint Plan and the Confirmation Order;

2.  To determine the allowability, classification, or priority of claims and interests upon

objection by the Debtors, Reorganized Debtors, or by other parties in interest with standing to bring such objection or proceeding;

3.  To determine the extent, validity and priority of any lien asserted against property of the Debtors, Reorganized Debtors, or property of the Estates;

4.  To construe and take any action to enforce the Joint Plan, the Confirmation Order, and any other order of the Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Joint Plan, the Confirmation Order, and all matters referred to in the Joint Plan, the Confirmation Order, and to determine all matters that may be pending before the Court in these Cases on or before the Effective Date with respect to any person or entity related thereto;

5.  To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

6.  To determine any request for payment of administrative expenses;

7.  To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any claims resulting therefrom;

8.  To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of these Cases whether before, on, or after the Effective Date;

9.  To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

10. To modify the Joint Plan under 11 U.S.C. § 1193 in order to remedy any apparent defect or omission in the Joint Plan or to reconcile any inconsistency in the Joint Plan so as to carry out its intent and purpose;

11. Except as otherwise provided in the Joint Plan, the Confirmation Order, to issue injunctions to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Joint Plan or the Confirmation Order, or the

execution or implementation by any person or entity of the Joint Plan or the Confirmation Order;

12. To issue such orders in aid of consummation of the Joint Plan or the Confirmation Order, notwithstanding any otherwise applicable non-bankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

13. To enter final decrees closing these Cases.

## VIII.

## MISCELLANEOUS PROVISIONS

**A.    Post-Confirmation Status Report**

Within 120 days of the entry of the Confirmation Order, the Reorganized Debtors shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Joint Plan.  The Status report shall be served on the Office of the United States Trustee, the Subchapter V Trustee, and those parties who have requested special notice.  Further status reports shall be filed by the Reorganized Debtors every 120 days and served on the same parties until such time as a final decree is entered.

**B.    Post-Confirmation Conversion/Dismissal**

Any creditor or other party in interest may bring move to convert or dismiss the Cases under 11 U.S.C. Section 1112(b) after the Joint Plan is confirmed if there is a default in performing the Joint Plan.  If the Court orders either Case converted to a chapter 7 after the Joint Plan is confirmed, then all property that had been property of the corresponding chapter 11 Estate, and that has not been disbursed pursuant to the Joint Plan, will revest in the chapter 7 estate.

The order confirming the Joint Plan may also be revoked under very limited circumstances.  The Court may revoke the Confirmation Order if it was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the Confirmation Order.

**C.    Payment Dates**

Whenever any distribution to be made under this Joint Plan becomes due on a day other

than a Business Day, such distribution shall instead be made on the next Business Day.

**D.**    **Other Documents and Actions**

The Debtors, the Reorganized Debtors and the Disbursing Agents may execute such other documents and take such actions as may be necessary or appropriate to effectuate the transactions contemplated under this Joint Plan.

**E.**    **The Confirmation Order Controls**

In the event of any conflict between the provisions of this Joint Plan and the Confirmation Order, the Confirmation Order shall control.

**F.**    **Successors and Assigns**

The rights, benefits, and obligations of any Persons named or referred to in this Joint Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and assigns of such Person

**G.**    **Final Decree**

Once either Estate has been sufficiently administered to satisfy Rule 3022 of the Federal Rules of Bankruptcy Procedure, the appropriate Reorganized Debtor or another party as the Court shall designate in the Confirmation Order, shall file a motion with the Court to obtain a final decree to close the Cases.

## IX.

## DEFINED TERMS

The following terms (which appear in the Joint Plan as capitalized terms) have the meanings set forth below:

**"Administrative Claim"** means a Claim against one or both of the Debtors for administrative costs or expenses that are allowable under Bankruptcy Code Section 503(b). These costs or expenses may include, without limitation: (a) actual costs or expenses that were incurred after the Petition Dates and that were necessary to preserve the Debtors' Estates and operate a Debtors' business (such as employee wages); (b) Professional Fee Claims; (c) Administrative Tax Claims; (d) Ordinary Course Administrative Claims; (e) 503(b)(9) Claims; or (f) Non-Ordinary Course Administrative Claims (such as fees or charges assessed against the

Debtors' Estates under 28 U.S.C. Section 1930 or Rejected Lease Administrative Claims).

**"Affiliate"** shall have the meaning ascribed to it under 11 U.S.C. § 101(2).

**"Allowed"** refers to a Claim filed against a Debtor, other than an Allowed Administrative Claim, to the extent that:

(a)    either: (1) a proof of Claim was timely Filed; or (2) a proof of Claim is deemed timely Filed either under Bankruptcy Rule 3003(b)(1) or by a Final Order; and

(b)    either: (1) the Claim is not a Disputed Claim; (2) the Claim is allowed by a Final Order; or (3) the Claim is allowed under the Joint Plan.

Unless otherwise specified in the Joint Plan, an Allowed Claim does not include interest on the Claim accruing after the Petition Date.  Moreover, any portion of a Claim that is satisfied or released during the Reorganization Cases is not an Allowed Claim.

**"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq.

**"Bankruptcy Rule(s)"** means the Federal Rules of Bankruptcy Procedure.

**"Board"** or **"Board Members"** means, as applicable, the members of the Board of Directors of the Debtors or the Board of Directors of the Reorganized Debtors.

**"Business Day"** means a day that is not a Saturday, Sunday, or legal holiday.

**"Calendar Quarter Date"** means the first date of a three-month period on an annual calendar, that is either the first day of January, April, July, or October.

**"Case"** or **"Cases"** means the Debtors' voluntary bankruptcy cases pending in the Central District of California Bankruptcy Court – *In re G-Star Raw Retail, Inc.*, Case No. 2:20-bk-16040-WB, and *In re G-Star Inc.*, Case No. 2:20-bk-16041-WB, jointly administered under Case No. 2:20-bk-16040-WB.

**"Claim(s)"** means a claim as the term "claim" is defined in Bankruptcy Code Section 101(5).

**"Claims Objection Deadline"** means the deadline for objecting to Claims or Interests, as set forth herein in Section V.G.

**"Class"** means a group of Claims or Interests as classified under Section IV.

**"Confirmation Date"** means the date on which the Court enters the Confirmation Order

on its docket.

**"Confirmation Hearing"** means the hearing, as it may be continued from time to time, where the Court considers confirmation of the Joint Plan.

**"Confirmation Order"** means the Court order confirming the Joint Plan under Bankruptcy Code Sections 1191 and 1129.

**"Convenience Class Claim"** means an Allowed Unsecured Claim that is less than or equal to $1,000.00, other than an Administrative Expenses Claim, a Priority Tax Claim, a Priority Non-Tax Claim, or a Secured Claim; or an Allowed General Unsecured Claim that is reduced to $1,000 in accordance with Section IV.A.2(a) of this Joint Plan.

**"Court"** or **"Bankruptcy Court"** means the United States Bankruptcy Court for the Central District of California.

**"Debtor"** or **"Debtors"** means G-Star and G-Star Retail individually or collectively, as debtor and debtor-in-possession in their respective chapter 11 cases.

**"Disbursing Agent"** means the Persons tasked with making distributions to creditors as called for in this Joint Plan.  Reorganized G-Star shall serve as the Disbursing Agent for all obligations of Reorganized G-Star under this Joint Plan, and Reorganized G-Star Retail shall serve as the Disbursing Agent for all obligations of Reorganized G-Star Retail under this Joint Plan.

**"Disputed Claim"** means a Claim:

(a)    As to which a proof of Claim was filed or is deemed filed under Bankruptcy Rule 3003(b)(1); and

(b)    As to which the Debtor against which the Claim is asserted, either Reorganized Debtor, or any party in interest entitled to do so has filed an objection by the Claims Objection Deadline and as to which that objection has not been overruled or denied by a Final Order or withdrawn with prejudice by the movant.

Before the Claims Objection Deadline—and except to the extent that a Claim may have been allowed by a Final Order—a Claim is a Disputed Claim only to the extent that:

(a)    The Claim amount specified in the proof of claim exceeds the Claim amount listed

on the Debtors' Schedules;

(b)    The Claim is listed on the Debtors' Schedules as disputed, unliquidated, or contingent; or

(c)    The Claim's priority or status as a Secured Claim or Unsecured Claim, as listed on the proof of claim, differs from the Claim's priority or status as a Secured Claim or Unsecured Claim, as listed on the Debtors' Schedules.

Notwithstanding the above, to the extent that the Reorganized Debtors dispute the amount owed pursuant to a Claim but do not dispute some portion of the Claim, the undisputed portion of the Claim shall be treated as an Allowed Claim and only the disputed portion shall be treated as a Disputed Claim.

**"Effective Date"** means the date the Joint Plan becomes effective which is either (1) first Business Day which is at least fourteen (14) days following the date of the entry of the Confirmation Order, assuming there has been no appeal from, or order staying the effectiveness of, the Confirmation Order or (2) such earlier date chosen by the Debtors in the event the requirements set forth herein are waived by the Debtors.

**"Estate"** or **"Estates"** means the estate(s) created in the Debtors' Reorganization Cases under Bankruptcy Code Section 541.

**"Final Order"** means an order or judgment of the Court or another court of competent jurisdiction entered on such court's docket:

(a)    That has not been reversed, rescinded, stayed, modified, or amended;

(b)    That is in full force and effect; and

(c)    With respect to which:  (1) the time to appeal or to seek review, remand, rehearing, or a writ of certiorari has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending; or (2) any such an appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a writ of certiorari was sought.

**"Financial Advisor"** means Ryniker Consultants LLC as the Debtors' financial advisor.

**"General Unsecured Claim"** means a Claim that is not an Administrative Claim, a

AFDOCS/22814961.1

Priority Tax Claim, a Priority Unsecured Claim, or a Secured Claim.

**"G-Star"** means G-Star Inc., one of the above-captioned debtors and debtors-in-possession in these Cases.

**"G-Star General Unsecured Commitment"** means an amount equal to 1.25 times the estimated funds available for distribution to the class of general unsecured creditors in the hypothetical chapter 7 liquidation of G-Star described in **Exhibit 2** of the Joint Plan.

**"G-Star Retail"** means G-Star Raw Retail Inc., one of the above-captioned debtors and debtors-in-possession in these Cases.

**"G-Star Raw eStore"** means G-Star Raw eStore Inc., a wholly owned non-debtor subsidiary of G-Star.

**"G-Star Retail General Unsecured Commitment"** means an amount equal to 1.25 times the estimated funds available for distribution to the class of general unsecured creditors in the hypothetical chapter 7 liquidation of G-Star Retail described in **Exhibit 2** of the Joint Plan.

**"Impaired"** means that a creditor's legal, equitable, or contractual rights are altered by the Joint Plan, even if the alteration is beneficial to the creditor.  A contract provision that entitles a creditor to accelerated payment upon default does not, however, necessarily render the claimant impaired, even if the Debtors defaulted and the Joint Plan does not provide the creditor with accelerated payment.

**"Insider"** shall have the meaning ascribed to it in Section 101(31) of the Bankruptcy Code and shall also include any party deemed to be a non-statutory insider by order of the Bankruptcy Court.

**"Intercompany Claim"** means any Claim held by a Debtor or a Debtor's Affiliate against a Debtor or a Debtor's Affiliate.

**"Interest(s)"** means the interest—as the term "interest" is defined in Section 101(17) of the Bankruptcy Code—of any Person who holds an equity security in a Debtor.

**"Joint Plan"** or **"Plan"** means *Debtors' First Amended Joint Chapter 11 Plan Of Reorganization Dated October 1, 2020*, including any modifications or amendments thereto.

**"Joint Plan Scheduling Order"** means the *Scheduling Order Setting Plan Confirmation*

*Hearing and Related Deadlines* entered by the Court as Dkt. No. 79.

**"Net Disposable Income"** means income that is reasonably necessary to be expended "for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor" as defined under 11 U.S.C. § 1191(d)(2).

**"Parent"** means G-Star Raw C.V. is its capacity as the sole shareholder of G-Star.

**"Person"** means any individual, corporation, general partnership, limited partnership, limited liability company, association, joint-stock company, joint venture, estate, trust, government, political subdivision, governmental unit (as defined in the Bankruptcy Code), or entity.

**"Petition Date"** means July 3, 2020, which is the date on which the Cases commenced.

**"Priority Non-Tax Claim"** means an Allowed Claim entitled to priority against the Estates under Bankruptcy Code Section 507(a)(3), 507(a)(4), or 507(a)(6).

**"Priority Tax Claim"** means an Allowed Claim entitled to priority against the Estates under Bankruptcy Code Section 507(a)(8).

**"Professional Fee Claim"** means:

(a)    A Claim under Bankruptcy Code Sections 105, 327, 328, 330, 331, 363, 503, or 1103 for compensation for professional services rendered or expenses incurred on behalf of one or both of the Estates; or

(b)    A Claim either under Bankruptcy Code Section 503(b)(4) for compensation for professional services rendered or under Bankruptcy Code Section 503(b)(3)(D) for expenses incurred in making a substantial contribution to one or both of the Estates.

**"Reinstated"** means to leave unaltered the legal, equitable, and contractual rights to which a Claim or Interest entitles the holder of such Claim or Interest; or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default: (1) to cure any such default that occurred before or after the Petition Date, other than a default of a kind specified in Bankruptcy Code Section 365 (b)(2) or of a kind that Bankruptcy Code Section 365 (b)(2) expressly does not require to be cured; or (2) to reinstate the maturity of such

1  Claim or Interest as such maturity existed before such default.

2      **"Released Parties"** means each of the following in their capacity as such: (a) the Debtors

3  and Reorganized Debtors; (b) G-Star Raw eStore; (c) the Parent; (d) the Debtors' current officers,

4  directors, and managers; and (e) professionals employed in each Estate.

5      **"Reorganization Case"** or **"Reorganization Cases"** means, individually or collectively,

6  the Debtors' voluntary bankruptcy cases pending in the Central District of California Bankruptcy

7  Court – *In re G-Star Raw Retail, Inc.*, Case No. 2:20-bk-16040-WB, and *In re G-Star Inc.*, Case

8  No. 2:20-bk-16041-WB, jointly administered under Case No. 2:20-bk-16040-WB.

9      **"Reorganized G-Star"** means G-Star on and after the Effective Date.

10     **"Reorganized G-Star Retail"** means G-Star Retail on and after the Effective Date.

11     **"Reorganization Counsel"** means, as appropriate, counsel for the Debtors, Arent Fox,

12 LLP, 555 West 5th Street, 48th Floor, Los Angeles, California 90013-1065, attention M. Douglas

13 Flahaut and Christopher K.S. Wong.

14     **"Reorganized Debtor"** or **"Reorganized Debtors"** means the Debtor(s) on and after the

15 Effective Date.

16     **"Schedules"** means the Schedules of Assets and Liabilities and Statement of Financial

17 Affairs, as they may be amended from time to time, that the Debtors filed in compliance with

18 Bankruptcy Code Section 521(1).

19     **"Secured Claim"** means a Claim that is secured by a valid and unavoidable lien against

20 property in which the Estates have an interest or that is subject to setoff under Bankruptcy Code

21 Section 553.  A Claim is a Secured Claim only to the extent of the value of the claimholder's

22 interest in that property or to the extent of the amount subject to setoff, as applicable, as

23 determined under Bankruptcy Code Section 506(a).

24     **"Statutory Interest Rate"** means the applicable rate of interest on tax claims as

25 determined under applicable non-bankruptcy law, as made applicable to this Reorganization Case

26 pursuant to Bankruptcy Code Section 511.

27     **"Subchapter V Trustee"** means Gregory K. Jones in his capacity as duly appointed

28 Subchapter V trustee of the Cases.

1    **"Unsecured Claim"** means a Claim that is not an Administrative Claim, a Priority Tax

2    Claim, a Priority Claim, or a Secured Claim.

3                                        **X.**

4                        **RULES OF INTERPRETATION**

5        For purposes of this Joint Plan, unless otherwise provided elsewhere herein, (i) whenever

6    from the context it is appropriate, each term, whether stated in the singular or the plural, shall

7    include both the singular and the plural; (ii) each pronoun stated in the masculine, feminine or

8    neuter shall include the masculine, feminine and neuter; (iii) any reference in this Joint Plan to an

9    existing document, Exhibit or schedule filed or to be filed means such document or schedule as it

10   may have been or may be amended, modified or supplemented pursuant to this Joint Plan; (iv)

11   any reference to an entity as a holder of a Claim includes that entity's successors and assigns; (v)

12   except as otherwise stated herein, all references in this Joint Plan to Sections, Articles and

13   Exhibits are references to Sections, Articles and Exhibits of or to this Joint Plan; (vi) the words

14   "herein," "hereunder" and "hereto" refer to this Joint Plan in its entirety rather than to a particular

15   portion of this Joint Plan; (vii) unless otherwise provided in this Joint Plan, any reference in this

16   Joint Plan to a contract, instrument, release, indenture, agreement, or other document being in a

17   particular form or on particular terms and conditions means that such document shall be

18   substantially and materially in such form or substantially and materially on such terms and

19   conditions; and (viii) the rules of construction set forth in Section 102 of the Bankruptcy Code

20   shall apply to the extent such rules are not inconsistent with the express terms of this Joint Plan or

21   any other provision in this Section.

22

23

24

25

26                          *[Signatures on the Following Page]*

27

28

1

2   Dated: October 1, 2020

Respectfully submitted,

3

4   By: _____
    Co-Plan Proponent G-Star Inc.
    Nicole Clayton, Chief Executive Office

5

6

7   Dated: October 1, 2020

Respectfully submitted,

8

9   By: _____
    Co-Plan Proponent G-Star Raw Retail Inc.
    Nicole Clayton, Chief Executive Office

10

11

12

Respectfully submitted,

13   Dated: October 1, 2020

**ARENT FOX LLP**

14   By: */s/ M. Douglas Flahaut* _____
    Aram Ordubegian
    M. Douglas Flahaut
    Christopher K.S. Wong
    Counsel for Co-Plan Proponents G-Star
    Inc. and G-Star Raw Retail Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AFDOCS/22814961.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

**Liquidation Analysis**

*Filed as Dkt No. 115*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 2**

**Plan Projections**

*Filed as Dkt No. 115*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/22814961.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 3**

**Schedule of Assumed Leases and Executory Contracts for G-Star Raw Retail Inc.**

*Filed as Dkt No. 115*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 4**

**Schedule of Assumed Leases and Executory Contracts for G-Star Inc.**

*Filed as Dkt No. 115*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AFDOCS/22814961.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 5**

**Schedule of Rejected Leases and Executory Contracts for G-Star Raw Retail Inc.**

*Filed as Dkt No. 115*

1

**EXHIBIT 6**

2

**Schedule of Rejected Leases and Executory Contracts for G-Star Inc.**

3

*Filed as Dkt No. 115*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Arent Fox LLP, Gas Company Tower, 555 West Fifth Street, 48th Floor, Los Angeles, CA 90013.

A true and correct copy of the foregoing document entitled (*specify*): **DEBTORS' FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED OCTOBER 1, 2020** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) **10/01/2020,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (date) **10/01/2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**JUDGE**

Honorable Julia W. Brand
United States Bankruptcy Court
255 E. Temple Street, Suite 1382
Los Angeles, CA 90012

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) **_____,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/01/2020 | YVONNE LI | /s/ Yvonne Li |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Jeremy Faith on behalf of Interested Party Courtesy NEF
Jeremy@MarguliesFaithlaw.com,
Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com

M Douglas Flahaut on behalf of Debtor G-Star Inc.
flahaut.douglas@arentfox.com

M Douglas Flahaut on behalf of Debtor G-Star Raw Retail Inc.
flahaut.douglas@arentfox.com

M Douglas Flahaut on behalf of Debtor In Possession G-Star Inc.
flahaut.douglas@arentfox.com

Asa S Hami on behalf of Interested Party Courtesy NEF
ahami@sulmeyerlaw.com,
pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;ahami@ecf.inforuptcy.com

M. Jonathan Hayes on behalf of Interested Party Courtesy NEF
jhayes@rhmfirm.com,
roksana@rhmfirm.com;matt@rhmfirm.com;janita@rhmfirm.com;susie@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com

Brian D Huben on behalf of Creditor The Macerich Company
hubenb@ballardspahr.com, carolod@ballardspahr.com

Brian D Huben on behalf of Creditor VF Mall LLC
hubenb@ballardspahr.com, carolod@ballardspahr.com

Brian D Huben on behalf of Creditor Westfield Garden State Plaza Limited Partnership
hubenb@ballardspahr.com, carolod@ballardspahr.com

William W Huckins on behalf of Creditor Brookfield Properties Retail, Inc.
whuckins@allenmatkins.com, clynch@allenmatkins.com

William W Huckins on behalf of Creditor Simon Property Group, Inc.
whuckins@allenmatkins.com, clynch@allenmatkins.com

William W Huckins on behalf of Creditor Taubman Company
whuckins@allenmatkins.com, clynch@allenmatkins.com

Gregory Kent Jones (TR)
gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com

Dare Law on behalf of U.S. Trustee United States Trustee (LA)
dare.law@usdoj.gov

Adam A Lewis on behalf of Creditor United Parcel Service, Inc.
alewis@mofo.com, adam-lewis-3473@ecf.pacerpro.com

David W. Meadows on behalf of Interested Party Courtesy NEF
david@davidwmeadowslaw.com

Jessica Mickelsen Simon on behalf of Creditor The Macerich Company
simonjm@ballardspahr.com, carolod@ballardspahr.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Jessica Mickelsen Simon on behalf of Creditor Unibail-Rodamco-Westfield
simonjm@ballardspahr.com, carolod@ballardspahr.com

Aram Ordubegian on behalf of Debtor G-Star Raw Retail Inc.
ordubegian.aram@arentfox.com

Kristen N Pate on behalf of Creditor Brookfield Properties Retail, Inc.
ggpbk@ggp.com

Victor A Sahn on behalf of Creditor Christine Hazel Cruz
vsahn@sulmeyerlaw.com,
pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;cblair@e
cf.inforuptcy.com;dlee@metallawgroup.com;dlee@ecf.inforuptcy.com

Victor A Sahn on behalf of Interested Party Courtesy NEF
vsahn@sulmeyerlaw.com,
pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;cblair@e
cf.inforuptcy.com;dlee@metallawgroup.com;dlee@ecf.inforuptcy.com

Michael St James on behalf of Creditor Geary-Grant LLC
ecf@stjames-law.com

Michael St James on behalf of Creditor Merchants Row Webward LLC
ecf@stjames-law.com

Jolene Tanner on behalf of Creditor UNITED STATES OF AMERICA on behalf of the INTERNAL REVENUE SERVICE
jolene.tanner@usdoj.gov, USACAC.criminal@usdoj.gov

Ronald M Tucker, Esq on behalf of Creditor Simon Property Group, Inc.
rtucker@simon.com, cmartin@simon.com;psummers@simon.com;Bankruptcy@simon.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Eric R Wilson on behalf of Creditor Turnberry Associates
kdwbankruptcydepartment@kelleydrye.com, MVicinanza@ecf.inforuptcy.com

Christopher K.S. Wong on behalf of Debtor G-Star Inc.
christopher.wong@arentfox.com, yvonne.li@arentfox.com

Christopher K.S. Wong on behalf of Debtor G-Star Raw Retail Inc.
christopher.wong@arentfox.com, yvonne.li@arentfox.com

Christopher K.S. Wong on behalf of Debtor In Possession G-Star Inc.
christopher.wong@arentfox.com, yvonne.li@arentfox.com

**2. SERVED BY UNITED STATES MAIL:**

**20 LARGEST CREDITORS OF G-STAR RAW RETAIL INC.**

441 Broadway LLC
73 Spring Street, 6th Floor
New York, NY 10012

Clarksburg Premium Outlets
P.O. Box 772986
Chicago, IL 60677-0286

475 Fifth Ave
P.O. Box 417420
Boston, MA 02241

Fashion Centre Mall, LLC
P.O. Box 402792
Atlanta, GA 30384

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

Fashion Show Mall, LLC
P.O. Box 86
Minneapolis, MN 55486-2773

Geary-Grant LLC
P.O. Box 748750
Los Angeles, CA 90074-8750

Green Hills Mall TRG LLC
P.O. Box 674523
Detroit, MI 48267

Hampton Management Co., LLC
135 East 57th, 22nd Floor
New York, NY 10022

HG Galleria, LLC
2088 Paysphere Circle
Chicago, IL 60674

Las Vegas North Premium Outlets
875 South Grand Central
Las Vegas, NV 89106

Macerich Associates, L.P.
401 Wilshire Blvd., Suite 700
Santa Monica, CA 90401

Newport Centre LLC
867545 Reliable Parkway
Chicago, IL 60686-0075

Penn Ross Joint Venture
c/o M.S. Management Associates Inc.
225 West Washington Street
Indianapolis, IN 46204

Rodeo Collections Ltd.
9629 Brighton Way
Beverly Hills, CA 90210

Santa Monica Place
P.O. Box 849436
Los Angeles, CA 90084-9436

Simon Property Group-CPG Partners
P.O. Box 822884
Philadelphia, PA 19182-2884

Taubman La Cienega Partners LP
P.O. Box 67000
Detroit, MI 48267

Valley Fair Mall, LLC
P.O. Box 55702
Santa Clara, CA 95050

Westland Garden State Plaza LP
P.O. Box 56816
Los Angeles, CA 90074-6816

Wilson Canal Place II LLC
230 Royal Palm Way
Palm Beach, FL 33480

**20 LARGEST CREDITORS OF G-STAR INC.**

Aventura Mall Venture
414 Seneca Avenue
Ridgewood, NY 11385

Avesta Holdings LLC
3393 Peachtree Rd.
Atlanta, GA 30326

Better Pak Container Corp.
675 Dell Road
Carlstadt, NJ 07072

City of Los Angeles
P.O. Box 30879
Los Angeles, CA 90030

EMPIRE State Properties
414 Seneca Avenue
Ridgewood, NY 11385

Fox Horan & Camerini LLP
885 Third Avenue
New York, NY 10022

Glory Manufactory Limited
2696 Solution Center
Chicago, IL 60677-2006

King of Prussia Associates
2088 Paysphere Circle
Chicago, IL 60674

Kingsbridge Cleaners & Tailors
P.O. Box 1920
New York, NY 10101

L.A. Models
P.O. Box 1920
New York, NY 10101

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Logicalis
25 Senate Place
Jersey City, NJ 07306

Marcum LLP
1550 S. Gene Autry Trail
Palm Springs, CA 92264

Port Logistic Group
P.O. Box 14106
New Brunswick, NJ 08906

Shaherison 599 Co, LLC
P.O Box 822884
Philadelphia, PA 19182-2884

SLG Systems, Inc.
P.O. Box 14106
New Brunswick, NJ 08906

SPS Commerce Inc.
P.O. Box 1480
Riverside, CA 92502

Total Benefit Solutions
2088 Paysphere Circle
Chicago, IL 60674

ULINE Shipping Supply Specialists
120 Wooster Street
New York, NY 10012

UPS United Parcel Service
P.O. Box 7247-0244
Philadelphia, PA 19170

YRC
P.O. Box 13573
Newark, NJ 07188

**REQUEST FOR SPECIAL NOTICE**

Ryniker Consultants LLC
156 Dubois Avenue
Sea Cliff, NY 11579

Seyfarth Shaw LLP
333 South Hope Street
Suite 3900
Los Angeles, CA 90071

Office of Unemployment Compensation TAx Services (UCTS)
Dept of Labor and Industry
Commonwealth of Pennsylvania
651 Boas Street Room 925
Harrisburg, PA 17121

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

AFDOCS/22911753.1

**F 9013-3.1.PROOF.SERVICE**